Paul OLIVERI, Plaintiff,

v.

Joseph THOMPSON, Badge # 381, individually and as a Detective of the Suffolk County, New York Police Department; Gerald Giammatteo, Badge # 2547, individually and as a Police Officer of the Suffolk County, New York Police Department; Julius Cseh, Badge # 426, individually and as a Detective of the Suffolk County, New York Police Department; Donald J. Dilworth, individually and as Commissioner of the Suffolk County, New York Police Department; Patrick Henry, individually and as District Attorney of Suffolk County; County of Suffolk, Defendants-Appellees Cross-Appellants.

Appeal of Arthur V. GRASECK, Jr., Appellant-Cross Appellee.

Nos. 1147, 1281, Docket Nos. 86–7054, 86–7086.

United States Court of Appeals, Second Circuit.

Argued April 28, 1986.

Decided Oct. 15, 1986.

Ramsey Clark, New York City (Morton Stavis, William M. Kunstler, New York City, Center for Constitutional Rights, of counsel), for appellant-cross appellee.

Robert Calica, Garden City, N.Y., (Reisman, Peirez, Reisman & Calica, Myra L. Paiewonsky, Richard Mathews, of counsel), for defendants-appellees-cross-appellants, County of Suffolk.

Benjamin Greshin, Smithtown, N.Y., for Suffolk County Bar Ass'n, amicus curiae.

Before NEWMAN, PIERCE, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Most lawyers who litigate in our federal courts perform their function at a commendable level of professionalism, advancing claims and defenses with the zeal of a trained advocate, but properly tempering enthusiasm for a client's cause with careful regard for the obligations of truth, candor, accuracy, and professional judgment that are expected of them as officers of the court. Because, we suppose, in a system as large and diverse as our federal court system, it is inevitable that a few attorneys will occasionally fall short in these professional obligations, sanctions against attorneys play a limited but necessary role in the administration of our civil justice system. Severe forms of misconduct have traditionally been subject to contempt citations, review by bar association grievance committees, and in extreme cases, suspension or disbarment. In recent years, however, increasing attention has been focused upon lesser sanctions as a means of fine-tuning our litigation system to weed out some of its abuses and to improve its dispute-resolving function.

At issue on this appeal is one of those lesser sanctions—requiring an offending attorney to pay his adversary's attorneys' fee as part of the damage caused by asserting and continuing to litigate frivolous claims. Specifically, we are called upon to decide whether the district court's award of $5,000 in attorneys' fees against plaintiff's attorney for instituting and maintaining the underlying § 1983 action on behalf of an arrestee against three Suffolk County police officers, their commissioner, the district attorney, and the county itself, was proper when imposed under 28 U.S.C.

§ 1927 and rule 11 of the Federal Rules of Civil Procedure.

The sanctioned attorney, Arthur V. Graseck, Jr., has appealed, contending (a) that the award under § 1927 was unsupported by specific findings of subjective bad faith and improper purpose, (b) that rule 11 was improperly applied to the continuation of a properly initiated claim after the attorney should have known it was not well grounded in fact, (c) that the district court should have considered the deterrent effect of its decision on the few attorneys in Suffolk County who have been willing to represent unpopular plaintiffs in civil rights cases, (d) that the district court improperly ignored defendants' failure to seek earlier dismissal of the allegedly frivolous claim, and (e) that an evidentiary hearing was required before imposing the sanction.

In opposing the main appeal the county contends that the district court properly sanctioned attorney Graseck under § 1927 and rule 11. By a cross-appeal the county also contends that the district court erred in reducing their attorneys' actual expense of $51,112.50 to the $5,000 sanction imposed, a reduction made because the district court found, after a hearing, that Graseck was unable to pay a higher sum.

Mindful of the marked increase in incidents that have prompted sanctions against attorneys by the district courts as well as by this court, and acutely aware that we must not "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law", *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985), we address the important issues presented, first taking up by way of background the underlying routine "drug bust" that precipitated both plaintiff's civil rights claim and defendants' desire to impose sanctions on plaintiff's attorney for bringing that claim.

## I  BACKGROUND

### A.  *Facts Underlying The Section 1983 Claim.*

Many of the underlying facts are undisputed. On August 26, 1982, plaintiff Oliveri was arrested by three Suffolk County police officers acting undercover in a "buy and bust" operation with a twist: it had no "buy". Oliveri's arrest was forcible, the degree of force being in dispute. When arrested, Oliveri had no drugs in his possession. Taken to police headquarters at Hauppauge, New York, Oliveri was charged with attempted criminal sale of a controlled substance, heroin, in violation of sections 110.00 and 220.41 of the Penal Law of the State of New York, the asserted basis for the charge being that Oliveri had offered to sell detective Joseph Thompson one ounce of heroin for $1,000.

Oliveri was held in custody for six days until September 1 when he was released on his own recognizance by a judge of the Suffolk County District Court. Two weeks later the charges were dismissed on motion of an assistant district attorney. A representative of the district attorney's office had offered to dismiss the charges if Oliveri would release the county and its employees of any liability for the arrest and prosecution. Oliveri refused, but the charge was dismissed anyway.

### B.  *Facts Related By Client Oliveri To Attorney Graseck.*

Since the sanction under consideration on this appeal was imposed on attorney Graseck, our factual focus must be on the information available to him at the relevant times. We begin, therefore, with what Oliveri told Graseck before the complaint was prepared and filed. According to Oliveri, on the night of his arrest he arrived at about 7:30 p.m. at McTee's Bar in Hauppauge where he met a man who identified himself as "Jay" (defendant Cseh, a Suffolk County police officer acting undercover). Oliveri had no money, but for a period of at least two hours "Jay" plied Oliveri with drinks. As Oliveri became drunk, their small talk turned to drugs, and eventually "Jay" took Oliveri outside to introduce him to a friend who was seeking to purchase heroin. The friend (defendant Thompson, who, like Cseh, was a Suffolk

County police officer acting undercover) engaged in a conversation with Oliveri after which Oliveri left to make a phone call, borrowing 30 cents from "Jay" for that purpose.

After he left the phone booth and while walking away from the undercover officers, Oliveri's arm was grabbed and pinned behind his back. The person who grabbed him then lifted him off the ground in a chokehold, carried him seventy-five feet across a parking lot, and smashed his face against the trunk of a car, causing his mouth, gums, and lips to bleed. Defendant Thompson told Oliveri he was going to spend 25 years to life in jail if he did not tell Thompson "where he could go bust somebody for drugs." Oliveri said he did not know where he could do that. According to Oliveri, he was then beaten by three or four police officers and taken away in the car to be arraigned.

### C. *Attorney Graseck's Own Investigation.*

Graseck had extensive experience in criminal and civil rights cases in Suffolk County largely with indigent defendants, many of them members of minority groups. To him, Oliveri's story of arbitrary and brutal conduct by Suffolk County police officers had a familiar ring. Before filing the complaint at issue here, however, Graseck not only interviewed Oliveri at length, but he also obtained a copy of his eligibility questionnaire from the Legal Aid Society, which had represented Oliveri after his arrest. Graseck also obtained copies of the police and court records relating to Oliveri's arrest, incarceration, and release.

Speaking to Oliveri, Graseck noticed that he spoke slowly and often repeated himself. To Graseck, Oliveri appeared emotionally disturbed. Hospital records that Graseck later obtained confirmed that Oliveri suffered from prior brain damage.

### D. *The Complaint.*

Based on his interview with Oliveri, his familiarity with other cases against Suffolk County police officers, and his review of documents, Graseck prepared and filed the complaint. Against police officers Thompson, Giammatteo, and Cseh, Graseck asserted claims of unconstitutional arrest and excessive force. Against Thompson, who signed the felony complaint, he charged malicious prosecution. Against Commissioner Dilworth and the County of Suffolk, he claimed a failure to train, supervise, and discipline the three officers. Against District Attorney Henry, the complaint sought an injunction barring the practice of seeking a release of civil rights claims as a condition for dismissal of criminal charges.

### E. *Pretrial Proceedings.*

For lack of funds Graseck did not depose the defendants. He did serve written interrogatories, some of which were not fully answered until shortly before trial. Included in defendants' response to the interrogatories were two pieces of evidence that were to prove critical to the trial court's imposition of sanctions. One was two photographs of Oliveri that defendants represented had been taken approximately one hour after his arrest. The other was a transcript and tape recording of the conversation between Oliveri and officer Thompson that led up to his arrest. According to the defendants, this evidence completely negated Oliveri's claims.

The photographs, which were of Oliveri from approximately the waist up, revealed no obvious sign of physical abuse. The tape recording, according to defendants, established conclusively that Oliveri offered to sell heroin to Thompson, thereby providing probable cause for the arrest and felony complaint and eliminating the possibility of any unconstitutional arrest and prosecution.

Defendants Dilworth, Henry, and Suffolk County were represented by the County Attorney's office. The individual police officers were represented by separate counsel, selected by the officers but paid by the county, in order to avoid a potential conflict of interest problem condemned by this court in *Dunton v. County of Suffolk,*

*State of New York,* 729 F.2d 903, 908 (2d Cir.1984). Defendants deposed Oliveri.

### F. *Defendants' Last Minute Motions and The Trial.*

After the jury was sworn, but before opening statements, defendants moved for summary judgment dismissing all claims, relying on the tape recording, the photographs, and Oliveri's deposition. Although the district judge denied defendants' motion as untimely, he did dismiss the claim against District Attorney Henry on the ground that Oliveri, who had refused to sign the release requested by the D.A.'s office, lacked standing to bring the claim. Simultaneously, Graseck voluntarily withdrew the claims against Suffolk County and Police Commissioner Dilworth. The remaining claims of false arrest and excessive force against the three police officers, and malicious prosecution against officer Thompson proceeded to trial.

Not surprisingly, when the police officers testified at trial to the events leading to Oliveri's arrest, their version contrasted sharply with the story initially told by Oliveri to Graseck and repeated in his trial testimony. According to the officers, Oliveri was observed, on April 24, two days before his arrest, by officer Giammatteo at a shopping center. Giammatteo's suspicion was aroused when he observed Oliveri approaching and trying to speak with various groups of young people, many of whom turned away when Oliveri began to speak. Later that evening officers Giammatteo and Cseh observed Oliveri at McTee's Bar. A possible drug sale was mentioned, and Oliveri allegedly agreed to meet with the undercover officers the following night to consummate the transaction. Although Oliveri did not show up at the appointed time, he was observed later that evening arriving and leaving McTee's without incident.

The encounter that led to the arrest began at approximately 8:00 p.m. on the following day, April 26. According to the officers, Oliveri repeatedly assured them that he could obtain heroin and offered to sell one ounce to Thompson for $1,000, thereby supplying the requisite probable cause for his arrest. Oliveri resisted the arrest, the officers testified, and they employed only the force necessary to subdue him and effect the arrest.

By special verdicts the jury found for defendants, determining specifically that the arrest was based on probable cause, that none of the defendants had used excessive force either in making the arrest or while plaintiff was in custody, and that defendant Thompson had not signed the felony complaint maliciously.

After dismissing the jury, the trial court commented that:

> this plaintiff [Oliveri], in my opinion, he lied, committed perjury beyond a reasonable doubt[,] and if I thought that he was a normal individual I might very well have this record sent to the United States Attorney for possible prosecution. There is something wrong with this plaintiff and he may very well be a danger to the community as well as to himself, but there is no question in my mind, that he committed perjury.
>
> \* \* \* \* \* \*
>
> Mind you, in my humble opinion, if there were no tape of the proof of what went on that would have been enough[,] but to have them on tape and when it was argued that he spoke the same way on August 26 on the tape as he did when he testified in his slow and holding [halting?] manner, when the tape was played I had forgotten the tempo. There was no question he was negotiating like a real drug dealer, no hesitation there.

Joint App. at 799–800.

On direction of the court the clerk entered judgment dismissing the complaint.

### G. *The Motion for Sanctions.*

All of the foregoing is only background for the sanctions application which precipitated this appeal. Soon after the trial, defendants made a joint motion for sanctions against attorney Graseck under both rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, seeking excess

costs, expenses, and reasonable attorneys' fees and expenses totalling $51,112.50. They also sought a similar award against Oliveri under 42 U.S.C. § 1988. Ultimately, the district court found both Graseck and Oliveri liable "for attorney's fees and costs for instituting meritless claims and for continuing the prosecution of claims after it became apparent that they were without a factual or legal basis." *Oliveri v. Thompson,* No. CV 83–3572, order on application to award costs, at 15 (E.D.N.Y. Nov. 13, 1985) [hereinafter cited as district court's order].

Because there was some question about Graseck's ability to pay an award of that amount, the district court scheduled a hearing to determine the issue. Following the hearing, the court determined that attorney Graseck was unable to pay the full amount of attorney's fees and disbursements claimed by the county, and awarded $5,000 to the county against attorney Graseck and $500 to the county against Oliveri whose indigency was not in dispute. The court noted expressly that the award against Oliveri was under 42 U.S.C. § 1988, and that the award against attorney Graseck was under 28 U.S.C. § 1927 and rule 11. The court stayed execution of the awards pending this appeal. Attorney Graseck has appealed; plaintiff Oliveri has not.

## II  DISCUSSION

### A.  *Sanctions Generally.*

Even though the subject of sanctions is a distasteful one for any court, increasing tensions in and occasional abuses of the judicial system have prompted both judges and legislators to turn toward sanctions as a means of improving the litigation process. Unfortunately, however, we do not yet have an integrated "code" of sanctions to supply coherent guidance. Indeed, the sources of judges' sanctioning power are diverse, and the standards invoked have not always been either clear or consistently applied. We think it helpful, therefore, to review some of the bases for the imposition of sanctions, particularly in the form of attorneys' fees, to attempt to reconcile the

precedents discussing and applying sanctions, and to present what we regard as the current status of the law for the imposition of sanctions on attorneys and parties, all with a view toward facilitating disposition of future disputes in this area.

In our review of the different bases for sanctions, we shall consider the different sources of sanctioning power, against whom the sanction may be imposed, and the standard which determines whether it should be imposed. We note preliminarily that sanctions for misconduct and abuse of the legal system seem to be inevitably interwoven with the problems of shifting the burden of attorneys' fees, which have become the primary cost factor in litigation. For a prevailing party to recover all or part of the burden imposed by the fees his attorney charges could be viewed as an aspect of compensation for damages inflicted by the other party. Shifting that burden might also be viewed as a penalty imposed for either bringing an unsuccessful lawsuit or for unsuccessfully defending against a meritorious lawsuit. Indeed, there is no clear line between attorneys' fees as damages and attorneys' fees as sanctions.

We turn then to the primary sources of a district court's power to impose sanctions and shift the burden of attorneys' fees. We shall consider (1) the "American Rule", (2) inherent power, (3) 42 U.S.C. § 1988, (4) 28 U.S.C. § 1927, and (5) rule 11 of the Federal Rules of Civil Procedure.

### 1.  *The "American Rule".*

The so-called "American Rule" is the background against which all discussion of shifting the burden of attorneys' fees must be viewed. This rule is that "[i]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). It is with the exceptions to this rule, statutory and judge-made, that we are concerned.

## 2. *Inherent Power.*

Under the inherent power of the court to supervise and control its own proceedings, an exception to the American Rule has evolved which permits the court to award a reasonable attorneys' fee to the prevailing party when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons * * * ". *F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). Awards under the inherent power exception to the American Rule may be made against the losing party or against the attorney for the losing party. *See, e.g., Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir.1986) (award made against party); *Weinberger v. Kendrick*, 698 F.2d 61, 80–81 (2d Cir.1982) (award made against attorney), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983).

■ This bad-faith exception permitting an award of attorneys' fees is not restricted to cases where the action is filed in bad faith. An inherent power award may be imposed either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons. " '[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973); *see Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977). This circuit has interpreted the standard restrictively:

> To ensure, however, that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both " 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts."

*Dow Chemical Pacific Ltd.*, 782 F.2d at 344 (citations omitted); *see Weinberger*, 698 F.2d at 80; *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980); *Browning Debenture Holders' Committee*, 560 F.2d at 1089.

## 3. *42 U.S.C. § 1988.*

Section 1988, in language identical or similar to a number of statutory fee shifting provisions, provides that in certain types of civil rights actions, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Although the court below awarded $500 to the County of Suffolk against plaintiff Oliveri under this section, that part of the order has not been appealed, so this section is not before us for review. It is mentioned here only to fill out the picture of attorneys' fees and sanctions, and to highlight some of its similarities to and differences from awards grounded in other sources.

An award under § 1988 is available to the prevailing party and is charged against the losing party, not his attorney. In order to further the policies underlying the civil rights statutes the Supreme Court has applied a bifurcated interpretation to the term "prevailing party". If a plaintiff prevails, then attorneys' fees are ordinarily allowed the plaintiff unless "special circumstances would render such an award unjust". *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (per curiam).

A different standard applies when a defendant prevails, for there attorneys' fees may be awarded only if the court finds that the plaintiff's claim was " 'frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.' " *Hughes v. Roe*, 449 U.S. 5, 15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978)). Significantly, the detailed findings of bad faith necessary to justify invocation of the inherent power exception to the American Rule

are not a prerequisite to an award of attorneys' fees under § 1988. *See Davidson v. Keenan,* 740 F.2d 129, 133 (2d Cir.1984). Indeed, subjective bad faith is not even a requirement for imposition of sanctions in favor of a prevailing defendant. "The proper test for that award is whether the claim itself is clearly meritless. * * * [I]f a claim is groundless, the mere fact that the plaintiff relies on his attorney's erroneous contrary advice does not relieve him of liability * * *". *Id.*

### 4. *28 U.S.C. § 1927.*

Unlike § 1988, which shifts attorneys' fees from one party to another, § 1927, entitled "Counsel's liability for excessive costs", imposes liability for misconduct on "any attorney or other person admitted to conduct cases in any court". 28 U.S.C. § 1927. The section provides that any such person "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* For many years § 1927 imposed a burden only for excess costs and expenses, which only rarely involved significant sums. As a result it generated very little litigation. *See Roadway Express v. Piper,* 447 U.S. 752, 759–64, 100 S.Ct. 2455, 2460–63, 65 L.Ed.2d 488 (1980). Since 1980, however, when it was amended by adding attorneys' fees as part of the sanction, much greater use has been made of this section.

Section 1927 also differs from § 1988 in that it applies a uniform standard for the imposition of sanctions, whether the person against whom fees are assessed represented the plaintiff or the defendant. As noted by the Supreme Court:

[Section] 1927 does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes. Dilatory practices of civil rights plaintiffs are as objectionable as those of defendants.

*Roadway Express,* 447 U.S. at 762, 100 S.Ct. at 2462.

When congress amended § 1927 in 1980 to include attorneys' fees among the category of expenses that a court might require an attorney to satisfy personally, it made clear that the purpose of the statute was "to deter unnecessary delays in litigation." H.R.Conf.Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S. Code Cong. & Ad. News, 2716, 2782; *see Cheng v. GAF Corp.,* 713 F.2d 886, 890 (2d Cir.1983). Imposition of a sanction under § 1927 requires a "clear showing of bad faith". *Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1010 (2d Cir.1986) (quoting *State of West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1092 (2d Cir.), *cert. denied,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971)). Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay. *See Acevedo v. Immigration and Naturalization Service,* 538 F.2d 918, 920 (2d Cir.1976). Although our precedents have not always made this bad-faith requirement clear, *see Cheng,* 713 F.2d at 891 n. 3 (stating that it need not be decided whether an award under § 1927 requires a finding of bad faith or merely "unreasonable conduct"), we hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power, *accord Colucci v. New York Times Co.,* 533 F.Supp. 1011, 1013–14 (S.D. N.Y.1982) (Weinfeld, J.). Indeed, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is, as noted above, that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.

5. *Rule 11, Federal Rules of Civil Procedure.*

Rule 11, requires that "[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed" by the attorney. It then provides that:

the signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11.

For enforcement of this requirement the rule further provides:

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*Id.*

From this language it is apparent that a sanction for attorneys' fees may be imposed either on the attorney who signs a paper, or on the party he represents, or on both. The key to rule 11 lies in the certification flowing from the signature to a pleading, motion, or other paper in a lawsuit. While a continuing prohibition against dilatory litigation is imposed by § 1927, *see Roadway Express*, 447 U.S. at 757, 100 S.Ct. at 2459; *Browning Debenture Holders' Committee*, 560 F.2d at 1088, rule 11, by contrast, deals with the signing of particular papers in violation of the implicit certification invoked by the signature.

■ Rule 11 applies only to the initial signing of a "pleading, motion, or other paper". Limiting the application of rule 11 to testing the attorney's conduct at the time a paper is signed is virtually mandated by the plain language of the rule. Entitled "Signing of Pleadings, Motions, and Other Papers; Sanctions", the rule refers repeatedly to the signing of papers; its central feature is the certification established by the signature.

In addition, when rule 11 was amended in 1983 to make sanctions mandatory, the rule was also amended to include the words "motion or other paper" each time after the word "pleading" was used. Thus, amended rule 11 applies to every paper signed during the course of the proceedings and not only to the pleadings. While the drafters of the rule could easily have further extended its application by referring to the entire conduct of the proceedings, they failed to do so and instead chose to expand only the categories of papers to which the rule applies.

Moreover, the advisory committee note to the amended rule states that the signer's conduct is to be judged as of the time the pleading or other paper is signed. Fed.R. Civ.P. 11 advisory committee note. It is difficult to imagine why this comment would be made if the rule were meant to impose a continuing obligation on the attorney. *See Utica Mutual Ins. Co. v. Firemans Fund Ins. Cos.*, 613 F.Supp. 1134, 1137 (S.D.N.Y.1985).

In support of its argument that the rule imposes a continuing obligation on the signing attorney, the county relies on our decision in *United States v. Carley*, 783 F.2d 341 (2d Cir.1983). There, the sanctioned attorney had repeatedly asserted frivolous arguments concerning the constitutionality of the tax laws before both this court and the district court. Although the opinion did not specifically state that Carley was sanctioned because he had signed a paper in violation of the rule, a reading of that opinion makes it clear that several papers were involved including, *inter alia*, a complaint and the briefs before this

court. There was no indication in the opinion that any of the papers involved complied with rule 11 when signed. Indeed, they could not have, since Carley's prior appeals to this court had established, beyond question, that the positions asserted by Carley were entirely without merit. Thus, *Carley* does not stand for the proposition that where, as here, an attorney continues prosecution of a claim that has become frivolous only after the signing of the relevant paper, that attorney may be subject to sanctions under rule 11.

■ The standards for assessing the propriety of the signer's conduct under rule 11 were recently articulated in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985). *Eastway* disposed of the notion that an attorney's subjective good faith could serve as a "safe harbor" against the imposition of sanctions, *id.* at 253, and established an objective standard, holding that sanctions shall be imposed when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper, *id.* at 254. Although *Eastway* might be read as leaving open the possibility of imposing rule 11 sanctions where the attorney is guilty of a subjective violation of the rule, we hold today that there is no necessary subjective component to a proper rule 11 analysis. Removing any subjective good faith component from rule 11 analysis should reduce the need for satellite litigation when a district court is called upon to impose a rule 11 sanction.

As a final matter we note that in imposing rule 11 sanctions, the court is to avoid hindsight and resolve all doubts in favor of the signer. As we stated in *Eastway*, rule 11 is violated only when it is "patently clear that a claim has absolutely no chance of success." 762 F.2d at 254.

B. *Sanctions Imposed Below.*

Turning from the general considerations about attorneys' fees and sanctions, we now take up the specific sanction at issue on this appeal and the problems relating to it. To begin with, no appeal was taken from the award to Suffolk County of $500 attorneys' fees against plaintiff Oliveri; consequently, there is no issue before us arising under § 1988. The only sanction now before us is the $5,000 in attorneys' fees awarded to Suffolk County against attorney Graseck. In imposing that sanction the district court did not rely on the bad faith exception to the American Rule, but instead specifically invoked § 1927 and rule 11.

In making its decision, the district court spoke in general terms and awarded attorneys' fees and costs against both Graseck and Oliveri "for instituting meritless claims and for continuing the prosecution of claims after it became apparent that they were without a factual or legal basis." District court's order at 15. To validly impose a sanction of attorneys' fees in this case, however, closer analysis than this is required.

The complaint prepared and filed by Graseck was brought against six defendants: three police officers, the police commissioner, the district attorney, and the County of Suffolk. Since the claims asserted against these defendants varied, whether or not a competent attorney after reasonable investigation would have asserted each of those claims also varies. Against all three police officers, Graseck advanced claims of unconstitutional arrest and excessive force both during the arrest and while Oliveri was in custody. Against officer Thompson, Graseck advanced a claim of malicious prosecution. Against the police commissioner, the complaint charges a failure of responsibility toward the conduct, training, and supervision of the three police officers. Against the district attorney, the complaint charges the implementation of a policy of attempting to coerce defendants into signing releases of civil rights claims against county employees before agreeing to dismiss charges against arrestees. Against Suffolk County, the complaint charges authorization, condonation, and/or approval of the acts of the other defendants. The complaint concludes with a demand for judgment, jointly and severally, against all

the defendants for a total of $3,000,000 in damages plus a permanent injunction against the practice of demanding a civil release of liability through the use of coercive prosecutorial power. The complaint is signed "Arthur V. Graseck, Jr.". We shall consider these claims separately.

### 1. *Unconstitutional Arrest.*

Graseck included the claims of unconstitutional arrest based upon the story told him by his client Oliveri, his own experience in litigating against the Suffolk County police, the arrest records, the felony complaint charging an attempted sale of heroin, and the court records showing dismissal of the complaint on motion of the assistant district attorney. Drawing on his prior experience with the practices of the Suffolk County district attorney in prosecuting narcotics cases, Graseck reasonably concluded that the arresting officers lacked probable cause when they took Oliveri into custody. The district court likewise assumed that when Graseck drew the complaint he "believed 'after reasonable inquiry [that the action against Thompson, Giammatteo, and Cseh was] well grounded in fact and [was] warranted by existing law.' rule 11, Fed.R.Civ.P., and that it did not multiply the proceedings 'unreasonably and vexatiously' 28 U.S.C. § 1927." District court's order at n. 5.

All that changed, however, according to the district court, when defendants turned over to Graseck the transcript of the tape recording of the events during and immediately preceding Oliveri's arrest. According to the district court "[a] reading of the transcript of the tape should have convinced Graseck that the arresting officers had probable cause to believe that Oliveri was involved in the sale and distribution of heroin prior to August 26; that he attempted to contact a source of supply when he returned to McTee's Pub; and that he offered to sell one ounce of heroin for the sum of one thousand ($1,000) dollars." *Id.* at 13. According to the district court, after Graseck received a transcript of the tape

he "should have discontinued the action." *Id.* at 15.

With respect to the claims against the three officers alleging lack of probable cause to arrest, we disagree with the district court. Since we have held that rule 11 does not impose a continuing obligation, and since we agree with Judge Mishler's determination that Graseck did not violate rule 11 merely in bringing the unconstitutional arrest claims, we necessarily review Graseck's actions with respect to those claims under only § 1927.

Oliveri was charged with attempting to sell heroin. To constitute an attempt under New York law, Oliveri's conduct would have to have "carr[ied] the project forward within dangerous proximity to the criminal end to be attained." *People v. Ditchik*, 288 N.Y. 95, 41 N.E.2d 905 (1942) (quoting *People v. Werblow*, 241 N.Y. 55, 61–62, 148 N.E. 786, 789 (1925)). Here, however, after the officers got Oliveri drunk, he suggested he could make a phone call to set up a delivery. The officers did not question Oliveri's authenticity as a drug dealer even though he said he could get 75% pure heroin, a dramatically higher purity than the 3% to 5% the undercover officer expected in such a street deal. In addition, Oliveri had no drugs on his person and stated that he had no money, as he had to borrow thirty cents to make the phone call. When he walked toward the phone booth, one officer remarked that they then had enough on the tape. Thus, they decided to arrest him even before he made the call, and, in fact, he still had the thirty cents on him when he was arrested, which indicates that the call, as Oliveri testified at trial, was never even made.

■ The words spoken by Oliveri, his conduct, his apparent unsophistication in drug dealing, and the peculiar circumstances of his dealings with the undercover officers do leave open a question of whether the officers had probable cause to arrest him for an attempted sale of heroin. In any event, the dispositive question is not whether probable cause existed for Oliveri's arrest, but whether Graseck had a

reasonable basis for a good faith belief that Oliveri's claims were colorable after he listened to the tape recording. Even if probable cause existed, on this record we cannot say that the tape recording of the activities leading to Oliveri's arrest, when viewed in light of the surrounding circumstances, constituted clear evidence that the unconstitutional arrest claims were continued by Graseck in bad faith, the standard necessary to support a violation of § 1927. *Accord Dow Chemical Pacific, Ltd.,* 782 F.2d at 344 (applying inherent power standard). A lawyer pursuing a civil rights claim is not liable for his adversary's attorneys' fees simply because his adversary prevails. Moreover, we note that the findings of the district court speak in terms too general to meet the "high degree of specificity" that we have required to support an award made pursuant to § 1927. *Id.* (quoting *Weinberger,* 698 F.2d at 80). Therefore, we reverse the imposition of sanctions for failure to withdraw the claims of unconstitutional arrest.

### 2. *Excessive Force.*

Part of Oliveri's claim against the officers was that as a group they employed excessive force in taking him into custody. According to Oliveri, one of the officers grabbed him from behind in a chokehold, carried him 75 feet across a parking lot, and threw him face down on the trunk of the police car. Later, he testified, the officers took turns in beating him.

On this claim, too, the trial court assumed that the initial complaint of excessive force was well grounded in fact—the basis therefor apparently being Oliveri's own story. The district court held, however, that once attorney Graseck was provided with two photographs claimed to have been taken of Oliveri at police headquarters an hour after the incident, he was obliged, on penalty of sanction, to discontinue the excessive force claim. The only discussion of this point in the district court's decision is: "the claim of assault at the car during the search is met by the picture of Oliveri taken soon after the alleged assault." District court's order at 15.

As with the claim for unconstitutional arrest then, the sanction in connection with the claimed excessive force was imposed for failure to withdraw the claim. Failure to withdraw a paper, in this instance a complaint asserting a claim that later proved to be groundless, does not violate rule 11, and, therefore, we consider the propriety of imposing the sanction pursuant to § 1927 only.

These police photographs are not the kind of clear evidence that would require withdrawal of this excessive force claim. The photographs were taken while Oliveri was in custody, and were taken by and kept in the control of the police. Even if they are assumed to be fair and accurate representations of Oliveri's condition one hour after the incident, all they reveal is an absence of blood or obvious lacerations. Oliveri's beard, mustache, and long, unkempt hair make drawing conclusions from these photographs about less obvious injuries a doubtful process. While the photographs do raise credibility questions about Oliveri's story of being thrown face down on the trunk of the car, they do not foreclose the claim, nor do they exclude the possibility of excessive force in administering the chokehold or in the later beating described by Oliveri. Indeed, at the end of the tape recording of the events that took place just prior to Oliveri's arrest, are gasping sounds that arguably corroborate Oliveri's story of the chokehold.

Heavily coloring the district court's decision on this point, we suspect, was its conclusion, having observed Oliveri's testimony at trial, that he was "unworthy of belief and his testimony was incredible." District court's order at 11. It goes too far, however, to impose monetary sanctions on an attorney on the ground that his client is not worthy of belief. Section 1927 was not intended to require an attorney to pass judgment on the credibility of his client on pain of a monetary sanction in the form of paying adversaries' attorneys' fees should he evaluate that credibility contrary to the

district court's view. Preservation of the attorney-client relationship, as well as the language of § 1927 that sanctions only unreasonable and vexatious conduct, require a cautious approach toward any claim of sanction grounded on issues of credibility. We hold, therefore, that to the extent that the district court imposed on Graseck a sanction for failing to discontinue Oliveri's claims of excessive force, it erred. Therefore, the imposition of sanctions for that claim is reversed.

### 3. *Malicious Prosecution Against Officer Thompson.*

■ Oliveri claimed that his constitutional rights were also violated by officer Thompson's filing the felony complaint against him, knowing that there was no probable cause to believe the crime had been committed. This claim is governed by the same considerations as the unconstitutional arrest claim discussed above. Oliveri's story, coupled with Graseck's own experience and investigation, provided sufficient basis for bringing the malicious prosecution claim. In addition, the tape recording, as previously indicated, does not provide clear evidence that Graseck's decision to continue the malicious prosecution claim constituted bad faith sufficient to violate § 1927. Consequently, sanctions were not appropriate under either rule 11 or § 1927, and, to the extent the district court awarded sanctions for failure to withdraw the malicious prosecution claim against officer Thompson, we reverse.

### 4. *Unconstitutional Release Policy of District Attorney.*

One of the major claims asserted by Oliveri was his effort to enjoin District Attorney Henry from further implementation of his policy of seeking to obtain releases of civil rights claims from criminal defendants as a condition for discontinuing prosecutions. This practice has been condemned by several courts. *See, e.g., Rumery v. Town of Newton,* 778 F.2d 66, 71 (1st Cir. 1985) (Timbers, J.), *cert. granted,* —— U.S. ——, 106 S.Ct. 1633, 90 L.Ed.2d 179 (1986);

*Henzel v. Gerstein,* 608 F.2d 654, 657 n. 4 (5th Cir.1979); *Boyd v. Adams,* 513 F.2d 83, 88 (7th Cir.1975).

■ The district court, however, found the claim frivolous and sanctionable not on the merits, but on the ground that since Oliveri had refused to sign the tendered waiver, he lacked standing to challenge its validity. We do not here decide the issue of standing because it is not before us; but we note that, like the merits of the claim, standing to assert it is not an easy question. Certainly, Graseck's claim against the district attorney fell far short of the type of frivolous, vexatious multiplication of proceedings that is prohibited by § 1927. We think further that there was a sufficient basis under the objective standard of rule 11 for assertion of the claim. When Graseck's complaint was filed, the Supreme Court had not yet decided *Lyon v. City of Los Angeles,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Even that decision, however, does not make it so clear that Oliveri totally lacked standing to assert this particular claim. To the extent, therefore, that the district court imposed its sanction for having either asserted or continued the claim against District Attorney Henry for implementing a questionable release policy, we conclude that the court erred, and we reverse.

### 5. *Claims Against Commissioner Dilworth and the County of Suffolk.*

These claims, according to the district court, were instituted "without any factual basis whatsoever". The complaint alleges that Dilworth, as police commissioner, was responsible for the conduct, training, and supervision of the defendant officers. It states that he was sued individually and in his official capacity. Graseck's allegations against the county are similar to those lodged against Dilworth and refer to the failure to "properly discipline, restrict and control employees" and the failure to take adequate precautions in the hiring, assignment, and retention of police personnel.

Nothing in the complaint or in any of the subsequent proceedings indicated any in-

volvement of Commissioner Dilworth in his individual capacity. To the extent that Dilworth was sued in his official capacity, the complaint alleges no more than, and is to be judged by the same standard as, a claim against the county itself, *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985); that standard requires proof of a municipal policy whose implementation infringed plaintiff's constitutional rights, *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ These types of claims against government entities and supervisors are frequently asserted in police misconduct cases; indeed, the allegations made here give the appearance of "boiler-plate" claims. We recognize, however, that when commencing a suit of this type neither the plaintiff nor his attorney is likely to know much about the relevant internal operations of the police department, nor about the disciplinary history and record of the particular police officers involved. In view of the strong policies favoring suits protecting the constitutional rights of citizens, we think it would be inappropriate to require plaintiffs and their attorneys before commencing suit to obtain the detailed information needed to prove a pattern of supervisory misconduct in the form of inadequate training, improper policies, and toleration of unconstitutional actions by individual police officers. A plaintiff does not have to be prepared to meet a summary judgment motion as soon as the complaint is filed. *Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1011–12 (2d Cir.1986).

Here, the district court imposed a sanction, noting that the claims against the commissioner and the county were instituted without any factual basis. While it may be true that Graseck was not in possession of facts that would support the allegations of improper training and supervision of the officers who participated in Oliveri's arrest, it is also true that Graseck was not in possession of facts that would negate the claim, and he was familiar with many similar claims against the same agency, some of them successful after trial, some of them settled. Moreover, it is extremely unlikely that before formal discovery any citizen would or could be in possession of such information; consequently, if sanctions were to bar possible exploration of such claims, the agency would be effectively immunized even if it were engaged in unconstitutional policies and practices.

We note that this is the type of claim that can easily be disposed of without putting the government to the expense of a trial. A limited amount of discovery, whether conducted openly or *in camera,* will generally reveal whether or not the claim has merit.

■ Indeed, that was the case here. Graseck, after being denied access to the relevant files by the county, despite proper discovery requests therefor, was finally permitted, upon the order of the United States Magistrate, to review those files. After doing so, Graseck concluded that his claims against the county and Dilworth were without merit, and he withdrew them before trial began. Although it would have been preferable to conduct such discovery shortly after this action was initiated, we cannot fault Graseck for the delay. Rather, it was the county's recalcitrance that delayed the relevant discovery to the eve of trial. Since we find no fault in Graseck's instituting the claims against the commissioner and the county, and since the delay in their withdrawal was due in significant part to the county's conduct, we reverse the order of the district court insofar as it imposed a sanction based on the claims against Commissioner Dilworth and the County of Suffolk.

6. *Claims Under 42 U.S.C. §§ 1981 and 1985(3).*

The district court held that these claims in the complaint were "devoid of any factual basis" and were "frivolous, unreasonable, without foundation, and brought in bad faith." District court's order at 13.

Absent from the complaint and from any of the circumstances suggested by the underlying events is any suggestion of racial discrimination as required by § 1981 or of " 'racial, or perhaps otherwise class-based, invidiously discriminatory animus' " as required by § 1985(3). *United Brotherhood of Carpenters & Joiners of America v. Scott,* 463 U.S. 825, 835, 103 S.Ct. 3352, 3359, 77 L.Ed.2d 1049 (1983) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). Attorney Graseck has not attempted to defend the inclusion of these claims in the complaint; apparently, they are routine, boiler-plate allegations included by him in his many civil rights complaints.

■ Since enactment of the amendment to rule 11 that requires more careful investigation and consideration of claims before including them in a complaint, such boiler-plate allegations are not only improper, but subject to an appropriate sanction. Nevertheless, from the record before us, it appears doubtful whether anyone gave these claims serious consideration or devoted any significant work toward disposing of them; therefore, any technical violation of rule 11 that may have occurred was *de minimis.* That sanctions are not warranted on these claims is made even more apparent by the fact that defendants waited until after jury selection before moving to dismiss those claims they now urge to be so patently frivolous as to require sanctions for merely asserting them. As a general principle, it would be inequitable to permit a defendant to increase the amount of attorneys' fees recoverable as a sanction by unnecessarily defending against frivolous claims which could have been dismissed on motion without incurring the additional expense. Thus, to the extent the district court sanctioned Graseck for the § 1981 and § 1985(3) claims, we reverse. We caution the bar that we disapprove of the inclusion in complaints of boiler-plate allegations of civil rights claims such as § 1981 and § 1985(3) when the plaintiff clearly does not fall into a protected class.

### C. *Type and Extent of Sanction.*

### 1. *General Principles.*

The Supreme Court has warned against creating a second lawsuit over attorneys' fees. *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). To deal effectively, fairly, and efficiently with sanction claims, district courts have a difficult task, but wide discretion. In exercising that discretion, however, it is essential that the questions be closely analyzed and that proper sanctioning principles be applied. In this opinion we have attempted to supply some guidance to that end.

Courts should be sensitive to the impact of sanctions on attorneys. They can be economically punishing, as well as professionally harmful; due process must be afforded. Fed.R.Civ.P. 11 advisory committee note. This does not mean, necessarily, that an evidentiary hearing must be held. At a minimum, however, notice and an opportunity to be heard is required. Here, "the judge's participation in the proceedings provide[d] him with full knowledge of the relevant facts", *id.,* and we find no fault in the procedures followed by the district court in handling this sanction application. Certain additional problems are presented, however.

### 2. *Special Rules for Sanctions in Civil Rights Cases?*

■ Graseck argues, and in this he is supported by an amicus brief from the Suffolk County Bar Association, that special treatment of sanctions should be given to attorneys who handle unpopular civil rights claims, particularly those representing indigents and minority clients. We reject this claim out of hand.

All attorneys are to be held to the same standards of conduct, no matter who their clients are. As the Supreme Court noted in *Roadway Express,* "[d]ilatory practices of civil rights plaintiffs are as objectionable as those of defendants." 447 U.S. at 762, 100 S.Ct. at 2462. Underlying the various rules imposing sanctions for attorney misconduct is a premise that all attorneys are expected

to conduct themselves and their lawsuits according to the standards necessary for the proper, efficient functioning of our legal system. Attorney Graseck is entitled to no special consideration simply because he is willing to represent clients who are rejected by many other attorneys. While he may deserve praise for his willingness to undertake such cases, he still must perform his function as an attorney in a professional manner and according to the standards of the system.

### 3. `Adjustment of Sanction for Ability to Pay?

On its cross-appeal the County of Suffolk contends that judgment should have been entered for the full $51,112.50 in attorneys' fees it has incurred in defending against all these claims, and that the district court erred when it reduced the amount of the sanction to only $5,000 on the ground that attorney Graseck could not afford to pay more. While this contention is now moot in light of our determination that no sanction may be imposed, we note that given the underlying purpose of sanctions—to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations—it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay. *Munson v. Friske,* 754 F.2d 683, 697 (7th Cir.1985); *Arnold v. Burger King Corp.,* 719 F.2d 63, 68 (4th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984); *Durrett v. Jenkins Brickyard, Inc.,* 678 F.2d 911, 916–17 (11th Cir.1982); *Faraci v. Hickey-Freeman Co.,* 607 F.2d 1025, 1028 (2d Cir. 1979).

### CONCLUSION

Without differentiating among defendants and particular claims, the district court concluded in general that Graseck was liable under both rule 11 and § 1927 for both instituting and continuing meritless claims. Because of their leveraged impact in the litigation process, however, sanctions against attorneys should not be given such a broad-brush approach. More precise analysis shows that Graseck could not be sanctioned either under rule 11 or § 1927 for instituting or continuing to litigate the claims of unconstitutional arrest and malicious prosecution. In addition, it was improper to impose any sanction for continuing the excessive force claims against the three police officers, for asserting the attack on the release policy of the district attorney, for asserting and continuing to the eve of trial the claims against the county and Commissioner Dilworth, or for initially asserting the claims under 42 U.S.C. §§ 1981 and 1985(3).

Reversed.