Russell W. **MAHLER**, Russell W. Mahler, II, and William Mahler, Petitioners,

v.

**UNITED STATES of America**, Respondent.

No. 3:98CV2014(JBA).

United States District Court, D. Connecticut.

March 11, 2002.

William M. Bloss, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, William Andrew Lichtenfels, Lichtenfels & Associates, Guilford, CT, for Petitioners.

David X. Sullivan, U.S. Attorney's Office, New Haven, CT, John V. Cardone, U.S. Department of Justice Tax Division, Washington, DC, for Respondent.

## RULING ON MOTION
## FOR CONTEMPT
### [DOC. # 47]

ARTERTON, District Judge.

The merits of this case, which began as a now-withdrawn petition to quash certain IRS administrative summonses and took several procedural turns on an enforcement counterclaim, are now effectively resolved. All that remains is a renewed motion by the United States to hold Petitioners ("the Mahlers") in civil contempt and assess costs against them. For the reasons set out below, the Court denies the Government's motion.

### I. Factual Overview and Procedural Background

#### A. The March 15, 2001 Order

For the purposes of this ruling, it is sufficient to characterize the dispute underlying this now-closed civil case as one regarding the Government's attempt to obtain copies of certain records related to closely-held corporations in which the Mahlers' had an interest. The Mahlers' attorney was concerned with protecting two of the Mahlers, who became targets in

a Grand Jury investigation believed to relate to their tax liability or responsibilities. Balancing the Government's enforcement powers against the Mahlers' Fifth Amendment concerns, the parties consented to a plan by which the Mahlers, on behalf of the corporations, would retain an agent to "search the corporate records[,] appear before the [IRS] and produce the responsive documents that the agent had been able to take into his or her possession during the course of the [search]." Tr. [Doc. # 30] at 5; *see United States v. Barth,* 745 F.2d 184, 188–189 (2d Cir.1984) (upholding a similar order directing the appointment of an agent in light of Fifth Amendment concerns). The United States agreed to the Mahlers' proposal, so long as their agent would produce the documents uncovered by the search and appear at a deposition to give testimony regarding the search undertaken.

After an abortive use of an initial agent, the Court entered an order [Doc. # 46] on March 15, 2001, consented to by both parties, that set out the agreed-upon procedure and scope of the replacement agent's duties:

1. The summoned corporations shall provide the Petitioners' Agent with a list of locations of all summoned corporate documents.

2. Petitioners' Agent shall make inquiry of persons identified in the attached Appendix List prepared by the United States at the Court's direction, as to the locations of all summoned corporate documents.

3. The summoned corporations shall allow the agent reasonable access to the documents at the location or locations described by the persons or corporations identified above.

4. The agent shall review the documents at the described location or locations and shall provide copies of all documents responsive to the summonses within thirty (30) days of this Order. The agent shall also be prepared to identify the documents he is producing and to testify with respect to the scope of his search, including: where he looked, when he conducted the search(es), and the basis for his belief that his production of copied documents constitutes full compliance with the summonses that are the subject of this action.

**B. The Mahlers' Purported Compliance**

The documents for each of the summonsed corporations were consolidated in the Mahlers' counsel's law office, accompanied by certifications signed by the Mahlers stating that "all documents in the custody or control of the Corporation ... that are responsive to an Internal Revenue Service summons served on it are currently located at 387 Orange Street, New Haven, CT." This set of documents and certifications were presented to Mark Fenelon, the agent retained by the Mahlers. Fenelon read the Court's order, and reviewed the documents and certifications provided by the Mahlers at the law office.

Initially, Fenelon did not know where the corporations normally kept their records, conducted no document search other than examining the documents left for him at counsel's office, and prepared a list of and produced just these documents as responsive to the summonses. He took no steps to inquire of any non-petitioner individuals identified in the Order as knowledgeable persons or officers or otherwise made any determination of the completeness of each corporation's production, relying wholly on the certifications signed by the Mahlers. At his deposition, Fenelon testified that he believed that referring to these certifications was reasonable compliance with the Order's requirement that the

agent "make inquiries of persons identified in the attached appendix."

### C. The Government's Contempt Motion

On May 21, 2001, the Government moved for contempt [Doc. # 47], asserting that Fenelon's performance (and thus the Mahlers' obligations under the March 15, 2001 order) was non-compliant. The Mahlers opposed sanctions, and at the August 13, 2001 contempt hearing submitted Fenelon's sworn affidavit, in which he detailed the manner and results of his subsequent, proactive search. The Mahlers did not appear at the hearing, and only William Mahler, Jr. offered any explanation for his absence (hospitalization).[1]

The Mahlers' attorney, who was directly involved with Fenelon's subsequent document searches at the corporate business location which the Mahlers had since identified as the address where all corporate records would be found, reported that the records "were in an abysmal state of organization" and that at least one additional document was found that should have been earlier produced. He further explained that it had been at his instruction that the corporations had originally gathered the responsive documents together for inspection and production at his office, rather than leaving them in their ordinary business place, which had precluded Fenelon from confirming the completeness of production.

Given the sixteen month delay in compliance with the original summonses, the absence of certain types of documents which the Government believed should have existed, the agent's original reliance only on the Mahlers' certifications, the supplemented production, and the Mahlers' unexplained absence from court, the Government's skepticism of the Mahlers' good faith was not unfounded. Nonetheless, its remaining principal dissatisfaction was the absence of confirmation of where corporate documents had been maintained in the ordinary course of business at the time the summonses had been served, and any movement or destruction of documents thereafter. The Mahlers' attorney agreed to provide answers to these questions by submission to the Court of declarations by the Mahlers, which the Government has deemed satisfactory after review.

Given the Mahlers' belated compliance, the Government maintains that their "delay and obfuscation during this proceeding" warrant imposition of a compensatory sanction under 28 U.S.C. § 1927 for the costs and time expended for the functionless May 11, 2001 deposition of Fenelon and for its renewed motion for contempt and for the hearing.

## II. Analysis

■■■ "An award of sanctions under the court's inherent power requires both clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes[,] and a high degree of specificity in the factual findings of [the] lower courts." *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986) (internal quotation marks omitted). This inherent power "may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *New York State NOW v. Terry,* 886 F.2d 1339, 1351 (2d Cir.1989), citing *EEOC v. Local 638, Local 28 of Sheet Metal*

---

1. The Government interpreted the Mahlers' non-appearance as further evidence of their refusal to comply with the Court's enforcement order.

*Workers' Int'l Ass'n,* 753 F.2d 1172, 1178 (2d Cir.1985) and *Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.1981) (per curiam). While the Government pursues these sanctions under § 1927, "the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is ... that awards made under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986).

█ While it is accurate to say that the enforcement process by which the Government has finally obtained compliance with its summonses has resembled protracted and tedious oral surgery on a difficult patient, the Court does not find clear and convincing proof that either the Mahlers or their attorney failed to comply with a clear and unambiguous order of the Court. While quite strained, it is not totally implausible to read the March 15, 2001 order as being satisfied by the Mahlers' performance: the Mahlers provided their agent, Fenelon, with the location of the documents, which was 385 Orange Street, where they had moved them. The Order did not expressly prohibit the Mahlers' from aggregating the documents into one single location, and its use of the term "summoned corporate documents" in the first sentence of the Order at least allows for the possibility that the Mahlers would have first determined which documents were in fact "summoned corporate documents."

Viewing the Mahlers' and their attorney's conduct in the context of the overall circumstances of this prolonged saga of enforcement, the Court concludes that counsel was acting out of an abundance of caution when he requested the independent agent plan and attempted to comply with the order in the narrowest, most prophylactic way possible. Stepping back and examining this "game of hare and hounds," *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950) from a neutral distance, the Court cannot conclude that the long, meandering road to compliance taken in this case was so completely without merit or justification as to "require the conclusion that [it] must have been undertaken for some improper purpose such as delay," *Shafii v. British Airways,* PLC, 83 F.3d 566, 571 (2d Cir.1996); *see also Salovaara v. Eckert,* 222 F.3d 19, 35 (2d Cir.2000). While in hindsight it is clear that the proceedings resulted in duplicative and unproductive hearings and motions, as well as belated but eventual compliance which could have been accomplished earlier, the Court is not persuaded that either counsel's conduct or that of the Mahlers has been shown to be so lacking in good faith as to warrant a finding of contempt and sanctions.

## Conclusion

The Government's Renewed Motion for Contempt and Request for Costs [doc. # 47] is DENIED.

IT IS SO ORDERED.