ACLI GOVERNMENT SECURITIES, INC., Plaintiff,

v.

Daniel RHOADES and Milton Braten, Defendants.

ACLI GOVERNMENT SECURITIES, INC., now known as Fuji Securities, Inc., Petitioner,

v.

Daniel RHOADES, Milton Braten, Lewis Henkind, and Holly Ventures, a purported partnership, Respondents.

ACLI GOVERNMENT SECURITIES, INC., now known as Fuji Securities, Inc., Petitioner,

v.

Daniel RHOADES, Milton Braten, Lewis Henkind, and Be Be Blond, Ltd., Respondents.

No. 81 Civ. 2555 (SAS).

United States District Court, S.D. New York.

Sept. 7, 1995.

Jacques Semmelman, Curtis, Mallet–Prevost, Colt & Mosle, New York City, for Plaintiff–Petitioner, ACLI Government Securities, Inc. k/n/a Fuji Securities, Inc.

Stephen J. Fallis, Carb, Luria, Glassner, Cook & Kufeld, New York City, for Defendant–Respondent Daniel Rhoades.

Davidoff & Malito, L.L.P., New York City, for Defendant–Respondent Milton Braten.

Stein, Simpson & Rosen, P.A., New York City, for Respondent Lewis Henkind.

Feldman & Troup, P.C., New York City, for Respondent Holly Ventures.

Stephen E. Powers, Ober, Kaler, Grimes & Shriver, New York City, for Respondent Be Be Blond, Ltd.

## MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff ACLI Government Securities ("ACLI") makes this application for costs, expenses and attorneys' fees incurred during the preparation of its Petition for a Declaratory Judgment and Permanent Stay of a Cross–Claim ("petition") as well as for this application. ACLI seeks reimbursement from Defendant Be Be Blond ("Be Be") and its counsel, the Ober, Kaler, Grimes & Shriver law firm ("Ober Kaler"), pursuant to 28 U.S.C. § 1927, Fed.R.Civ.P. 54(d) and the Court's inherent power.

### BACKGROUND

By oral order of this Court dated February 22, 1995, Be Be's Motion to Dismiss ACLI's petition was denied. *See* Transcript of Oral Argument, February 22, 1995 ("Tr.") at pp. 71–85. At argument, the underlying petition was granted, and the Court issued a declaration and order finding Be Be in privity with Daniel Rhoades and Milton Braten, binding Be Be to a prior judgment of this

Court and staying Be Be's cross-claim against ACLI in New York Supreme Court, County of Putnam.[1] The Court also granted costs and attorneys' fees, in an amount to be determined upon consideration of this application. *See* Tr. at pp. 81–82.

One of the central facts relating to the finding of privity between Rhoades, Braten and Be Be is that defendants failed to comply with a discovery order of this Court. Specifically, on June 17, 1994, ACLI served a subpoena requesting documents relating to ownership and control of Be Be. The subpoena was ignored. Accordingly, ACLI's July 12, 1994 Motion to Compel was granted by Judge Lasker on August 23, 1994. On September 19, 1994, Judge Lasker ordered that Be Be comply with the subpoena by September 30. The discovery order was docketed on September 20. On September 22, 1994, the order was published in the New York Law Journal. ACLI's counsel sent a copy by facsimile to Be Be Blonde's counsel on September 28, 1994, the same day he obtained the order from the Clerk of Court. *See* Brief of ACLI in Support of Petition ("Pet.Br.") at p. 18; Exhibit ("Ex.") O to Petition. All counsel were served by mail on September 29—prior to the September 30 compliance date, and therefore in a timely fashion. *See* Tr. at pp. 84–85; Pet.Br. at p. 19; Ex. P to Petition. Additionally, ACLI duly served the subpoena on the Secretary of State. *See* Tr. at p. 74. Defendants never requested an extension of time in which to respond to the discovery order, and to the best of this Court's knowledge, they remain in willful violation of that order to this day. *See* Tr. at pp. 14–15, 85.

### DISCUSSION

#### A. The Legal Standards

ACLI bases its application on implied, statutory and procedural sources of authori-

---

1. In that action, Be Be sought compensatory damages and $50 million in punitive damages against ACLI for allegedly clouding its title to a certain property in Putnam County, New York. ACLI had begun efforts to execute on the property to satisfy the judgment against defendants arising from the jury verdict in the original 1981 action. A prior determination by this Court had adjudged the property in question a tenancy in common held by defendants Rhoades, Braten

and Lewis Henkind. *See* Amended Judgment of March 19, 1993 (Lasker, D.J.) ("the 1993 Judgment"). Judge Lasker's determination, and the Court of Appeals' November 29, 1993 affirmance, ("the Order"), unmistakably rendered ACLI's actions appropriate. In fact, the Order also affirmed the grant of Rule 37(b)(2)(A) sanctions for willful violation of a discovery order. *See* Order at pp. 2–3.

ty, premised respectively upon the Court's inherent power, 28 U.S.C. § 1927 and Fed. R.Civ.P. 54(d).

### 1. *Inherent Power*

 The Court of Appeals for the Second Circuit has provided clear guidance on the inherent power of federal courts. "It is settled law that a court may impose attorney's fees under its inherent power as a penalty for misconduct during the course of litigation." *Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 37–38 (2d Cir.1995). Sanctions may be appropriately assessed where

> the challenged actions are (1) "entirely without color," and (2) motivated by "improper purposes," such as harassment or delay. In addition, the court's factual findings of bad faith must be characterized by "a high degree of specificity."

*Milltex*, 55 F.3d at 38 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987)). The Court of Appeals further explained,

> [t]his bad faith exception [to the American Rule] is not restricted to cases where the action is filed in bad faith. An inherent power award may be imposed either for commencing or continuing an action in bad faith, vexatiously, wantonly or for oppressive reasons.

*Oliveri*, 803 F.2d at 1272.

On a more general level, the Supreme Court has discussed the origins and acknowledged the importance of these implied judicial powers. *See e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("[t]here are ample grounds for recognizing . . . that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel") (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)); *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973) ("[f]ederal courts, in the exercise of their equitable powers, may award attorneys'

fees when the interests of justice so require"). In *Chambers*, the Supreme Court noted that exceptions to the American Rule take on several manifestations. *Id.* 501 U.S. at 45, 111 S.Ct. at 2133 (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975)). In addition to the bad faith exception, the Supreme Court recognizes an exception stemming from "willful disobedience of a court order." *Id.* (citations omitted).[2]

### 2. *28 U.S.C. § 1927*

 Under 28 U.S.C. § 1927, counsel may be found liable for excessive costs. That section provides:

> [a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Imposition of sanctions under § 1927 requires a "clear showing of bad faith" of the type "necessary to invoke the court's inherent power." *Oliveri*, 803 F.2d at 1273 (citations omitted). An award of sanctions is proper "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir.1995) (quoting *Oliveri*, 803 F.2d at 1273). Bad faith conduct may include pursuing "frivolous contentions," *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 345 (2d Cir.1986) (citations omitted), "frivolous motions," *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977), or "intentionally dilatory" conduct, *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir.1980).

### 3. *Rule 54(d)*

Fed.R.Civ.P. 54(d)(1) states, in relevant part:

---

**2.** The third general category, the so-called "common fund exception," is not applicable to this case.

Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs. . . .

28 U.S.C. § 1920 further elaborates on taxation of costs by a court or clerk. That provision includes, *inter alia*, printing, copying and transcript costs.

B. *Defendants' and Defense Counsel's Conduct and the Merits of the Application*

1. *Defendants*

■ It is all too clear from the record that defendants have continuously stalled, obstructed and delayed this litigation and the enforcement and satisfaction of the judgments against them. This conduct cannot be tolerated, particularly where, as here, the judgment in the underlying action remains unsatisfied for over a decade.[3]

■ Be Be's allegation that ACLI slandered its title, and its claim for $50,000,000 in punitive damages is baseless and frivolous given that this Court had already adjudicated title to the property. The Court found that the property was owned as a tenancy in common composed of Rhoades, Braten and Henkind. The Court deems the petition to be an extension of Be Be's dilatory cross-claim in state court. Be Be's motion to dismiss the petition in this Court was entirely lacking in merit. Courts must not be manipulated into readjudicating properly settled matters—conduct for which defendants, particularly Mr. Rhoades, have an unacceptable penchant.[4] The 1993 Judgment and its disposition of the Putnam property were entirely clear, as was its affirmance by the Court of Appeals.

Defendants' unseemly conduct has also been well documented by the Second Circuit.

**3.** It is noteworthy, although not a source of substantial weight for this decision, that the unprofessional conduct of defendants, particularly Daniel Rhoades, has been well-documented throughout this Circuit. This fact is relevant as Rhoades (and Braten) were held to be in privity with Be Be—by "absolutely overwhelming" evidence. *See* Tr. at pp. 73–82. Rhoades also served as secretary of Be Be, and his signature appeared on Be Be's corporate documents. *See* Tr. at p. 77; *see also ACLI v. Rhoades*, No. 81–2555 (S.D.N.Y. August 23, 1994) (order granting temporary stay of Cross–Claim) ("[p]laintiff has made a strong showing that defendants Rhoades and Braten control Be Be Blond, Ltd. and are using it as a foil to the effectuation of the previous judgments of this court"). The Court is extremely skeptical that defendants or counsel had a good faith belief that Rhoades and Braten were not in privity with Be Be. Indeed, with respect to defendants Rhoades and Braten, themselves, the probability of their bad faith approaches certainty.

While an abbreviated sampling of Rhoades' actions merits mention, the Court remains mindful that such conduct ought not serve as the basis for a fee award. *See Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 345 (2d Cir.1986) ("[v]iolations of orders in other litigation should not be the basis for an award in the instant litigation; such violations are best dealt with in the actions in which they have occurred").

In a related action, defendants Daniel and Norma Rhoades appealed the judgment of this Court which had held that Daniel Rhoades had fraudulently conveyed real property to his sister, Norma, on the day before a judgment against him

was entered for over $1,500,000. *ACLI Government Securities v. Rhoades*, 653 F.Supp. 1388 (S.D.N.Y.1987). The Court of Appeals summarily affirmed the District Court noting, *inter alia*, that there was "absolutely no evidence in the record to support [defendants'] argument which we find to be frivolous." *ACLI Government v. Rhoades*, No. 87–7848 at p. 1, 842 F.2d 1287 (2d Cir. February 29, 1988). The Court also awarded attorneys' fees and double costs to ACLI for defending the appeal. *Id.; see also Klein v. Rhoades*, 1995 WL 368434, *3 n. 4, 1995 U.S.Dist. LEXIS 8498, *6 n. 4 (S.D.N.Y. June 20, 1995) (Court declining to "set aside the jury finding that [Rhoades] . . . acted wilfully and wantonly;" sanctions against the law firm of Daniel and Norma Rhoades, pursuant to Fed. R.Civ.P. 11 and 28 U.S.C. § 1927; "[defendants' reprehensible conduct [] manifest]"; *ACLI v. Rhoades*, No. 81–2555 at p. 1 (S.D.N.Y. Aug. 23, 1994) (endorsement) ("[j]udicial notice may be taken that since the jury verdict in this case, the defendants Rhoades and Braten have utilized every method available to stall and defer payment of their obligations"). Not surprisingly, even *sanctions* awarded by this Court and the Court of Appeals have been ignored, if not scoffed at, by Rhoades and Braten. *See e.g.,* December 20, 1994 Reply Affidavit of Jacques Semmelman in Support of Petition at ¶¶ 13–14.

**4.** In addition to attempts to relitigate before this Court, defendants have brought such matters before the Second Circuit. *See e.g., ACLI v. Rhoades*, 963 F.2d 530 (2d Cir.1992) (affirming in substantial part stay of state claims already litigated in federal court).

In affirming the 1993 Judgment, the Court held that Rhoades, Braten and its purported partnership,[5] Holly Ventures, acted improperly in several ways.

> Appellants first assert that the district court did not have diversity jurisdiction in this case because the amount in controversy was less then [sic] $50,000 as required by 28 U.S.C. § 1332. *This argument is frivolous*. In a declaratory judgment action, the amount in controversy for purposes of the diversity statute ... "is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 [97 S.Ct. 2434, 2443, 53 L.Ed.2d 383] (1977).... Based on the purchase price alone the Property is worth over $200,-000....

*ACLI v. Rhoades*, No. 93–7295 at pp. 2–3 (2d Cir. Nov. 29, 1993) (emphasis added). The Court of Appeals also noted defendants' attempts to delay enforcement of the judgment against them. This particular phase in defendants' obstruction of the litigation led them to obfuscate ownership of the property. The Court wrote:

> [t]he few ministerial steps that the appellants point to as establishing their intent to form a partnership, such as filing a certificate of doing business as partners and registering with the IRS as a partnership, are equivocal at best and equally support the inference that they merely intended to label the Property as belonging to a partnership in order to shield it from creditors.

*Id.* at p. 5. In sum, the Second Circuit's detailed order affirming the 1993 Judgment and the sanctions serves to bolster an already strong record for granting the instant application. The Court agrees with ACLI in finding that defendants and counsel pursued a number of frivolous arguments and proceedings. At the very least, ACLI correctly identifies the inappropriate defense contentions (1) that this Court lacked subject matter jurisdiction to hear the Petition (Brief of Be Be Blond) ("B.Br.") at pp. 7–12; August 4, 1995 Affidavit of Stephen Powers in Opposition to Application ("Powers Aff.") at ¶¶ 22–34; (2) that Be Be Blond had no obligation to comply with the September 19, 1994 Order (B.Br. at pp. 12–19; Powers Aff. at ¶¶ 39–56), (3) that this Court erred in issuing the discovery Order (B.Br. at pp. 18–19; Powers Aff. at ¶¶ 57–65), and (4) that Be Be Blond was not in privity with Rhoades and Braten and not bound by this Court's prior Declaratory Judgment. (B.Br. at pp. 6, 10–11; Powers Aff. at ¶¶ 16, 33, 67).

It seems all but impossible that Be Be's argument—that it lacked actual notice of the adjudication of title and therefore could not be bound by the prior judgment—was made in good faith. Rhoades and Braten had an undeniably close relation with Be Be Blond. Therefore, Be Be was knowingly, and remained knowingly, in violation of the September 19, 1994 discovery order.

Moreover, the Court had previously found that service of the subpoena was proper—thereby rejecting defendants' argument that it had been improperly served. *See ACLI v. Rhoades*, No. 81–2555 (S.D.N.Y. August 23, 1994). Consequently, what makes this violation particularly egregious—besides the fact that defendants *continued* to fail to comply with discovery mandates—is that defendants once again attempted to manipulate this Court into readjudicating a settled issue.[6]

■ Accordingly, pursuant to Fed.R.Civ.P. 54(d) and the Court's inherent power,[7] attor-

---

**5.** In the Amended Judgment, this Court declared that Holly Ventures was not a partnership. *Id.* at p. 1.

**6.** Counsel Stephen Powers' Affidavit further documents defendants wrongheaded attempt to revisit the contention that the discovery order was untimely served. *See* Powers Aff. at ¶¶ 20–21.

**7.** Additionally, this Court imposes attorneys' fees against Daniel Rhoades pursuant to 28 U.S.C. § 1927. Generally, courts have applied this section to sanction counsel. However, the statutory language refers to "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof ..." and case authority does not appear to contradict this interpretation. Even the in-depth discussion of § 1927 in *Oliveri* does not rule out this interpretation. Therefore, the provision may well include parties who, although represented by counsel, have also appeared as counsel on their own behalf. As a lawyer who personally appeared in this action, and as a party in privity with Be Be Blond, Rhoades may be held liable under § 1927.

neys' fees, costs and expenses are awarded to plaintiff and against Be Be.

## 2. Counsel

■ This Court also found the written submissions and oral argument by Be Be's counsel disconcerting. In response to a host of insupportable, disingenuous contentions and suggestions, the Court was repeatedly compelled to interject. For example, in response to Mr. Powers' argument about Be Be's purported ownership of the Putnam property, the Court admonished:

> That's the most insulting argument I think a lawyer has made to a court. Tr. at p. 39.

> If you are saying that ... that would make a mockery of [Judge Lasker's] order. It would be a stupid order. Id. at p. 40.

In response to Mr. Powers' argument that the defendants were not obliged to comply with the discovery order, the Court stated:

> Mr. Powers, did Judge Lasker issue an order for Be Be Blond to produce documents? I don't understand how you have the temerity to stand on behalf of Be Be Blond and almost make any argument when you don't start out by addressing that. What do you say? You are ignoring an order of Court. Id. at p. 42.

> You say you ... [did not] have to comply with the order to compel. That is nonsense. That was nonsense and doesn't make any sense. Id. at p. 44.

> No. That's not the way you resist a subpoena. That's not the way you resist a court order.... It's not worthy of an officer of the court to make that representation. Id. at p. 45.

Further, despite the fact that this Court and the Court of Appeals ruled against defendants on one diversity jurisdiction argument, counsel raised a similar diversity jurisdiction argument at oral argument. Id. at pp. 34–35. Defendants' assertion that the petition was improperly commenced under the original 81–2555 index number because without a new proceeding and index number the Court would be without jurisdiction,[8] is at best a transparent attempt to cause further delay. The bald contention by Powers that this argument is well-settled by applicable legal principles is disturbing; no such authority is cited, and none has been found by the Court. While objections to subject matter jurisdiction are never waived, frivolous objections are never welcome.[9]

Particularly given his clients' propensity for meritless arguments and their rapidly deteriorating standing before this Court, counsel would be wise to reexamine the fine line between zealous advocacy and baseless opposition. The Court finds that the conduct and arguments of Mr. Powers were characterized by that level of impropriety that warrants, if not demands,[10] sanctions. Pursuant to 28 U.S.C. § 1927, attorneys' fees are imposed against the law firm of Ober, Kaler, Grimes & Shriver.

## CONCLUSION

The Court has reviewed ACLI's application and itemization of costs, expenses and attorneys' fees. The hours and rates as well as the costs and expenses are reasonable and in accordance with this Circuit's requirements.

For the foregoing reasons, and those enumerated on the record at oral argument, ACLI's application is granted. Pursuant to

---

8. Powers Aff. at ¶ 17; Brief of Ober Kaler in Opposition to Application at p. 8.

9. Again, the Court deems it noteworthy that defense counsel has made suspect representations to this Court in other matters before it. See e.g., Klein, 1995 WL 368434, *3 n. 2, 1995 U.S.Dist. LEXIS 8498 at *4 n. 2 (noting that Attorney Powers, seeking last minute adjournment of conference, may have falsely represented that parties were engaging in settlement discussions). Additionally, in an endorsement of ACLI's motion for a temporary stay of the state court cross-claim, Judge Lasker wrote that "[t]he affidavit of Ste-

phen E. Powers in opposition to the motion is an unprofessional attempt to throw dust in the eyes of the court." ACLI v. Rhoades, No. 81–2555 (S.D.N.Y. August 23, 1994) (endorsement).

10. See Warner Bros. Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120 (2d Cir.1989) (attorney committing "blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly;" "[a]n obligation is imposed on this Court to exercise its disciplinary powers to deter such happenings in the future").

**72**

Fed.R.Civ.P. 54(d), the Court's inherent power and 28 U.S.C. § 1927, attorneys' fees for the respective proceedings are granted in the amount of $24,107 and $7,296.25 jointly and severally against Be Be, its agent in privity, Daniel Rhoades, and its counsel, the law firm of Ober, Kaler, Grimes & Shriver. Pursuant to Fed.R.Civ.P. 54(d) and the Court's inherent power, costs and expenses for the respective proceedings are granted against Be Be in the amount of $819 and $355. The annexed judgment hereby issues and may be supplemented by final submissions of fees, expenses and costs.

SO ORDERED:

### JUDGMENT

It is hereby ordered, adjudged and decreed that, in accordance with the Opinion and Order issued on this day, the following award of attorneys' fees, costs and expenses hereby becomes due and payable as follows:

$31,403.25 jointly and severally against Daniel Rhoades, Be Be Blond and the law firm of Ober Kaler Grimes and Shriver; $1,174 against Be Be Blond.

Payment shall be made by certified check within 10 days from the filing of this judgment.

SO ORDERED.