**ACLI GOVERNMENT SECURITIES, INC., Plaintiff,**

v.

**Daniel RHOADES and Norma Rhoades, Defendants.**

No. 83 Civ. 4778(SAS).

United States District Court, S.D. New York.

July 14, 1997.

Jacques Semmelman, Curtis, Mallet–Provost, Colt & Mosle, New York, NY, for plaintiff.

Daniel Rhoades and Norma Rhoades, Brewster, NY, pro se.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

The unwavering contumacy of Daniel and Norma Rhoades has required plaintiff to move for civil contempt for the third time, thereby continuing the protracted course of litigation in the above-referenced and related matters.[1] Plaintiff also moves to refer Daniel Rhoades to the United States Attorney

1. *See ACLI Government Securities, Inc. v. Rhoades,* No. 96 Civ. 7502(SAS), 1997 WL 137437 (S.D.N.Y. Mar.25, 1997); *ACLI Government Securities, Inc. v. Rhoades,* No. 81 Civ. 2555(SAS), 1995 WL 731627 (S.D.N.Y. Dec. 11, 1995); *ACLI Government Securities, Inc. v. Rhoades,* No. 81 Civ. 2555(SAS), 1995 WL 540274 (S.D.N.Y. Sept.12, 1995); *ACLI Government Securities, Inc. v. Rhoades,* 907 F.Supp. 66 (S.D.N.Y.1995); *ACLI Government Securities, Inc. v. Rhoades,* 813 F.Supp. 255 (S.D.N.Y.1993); *ACLI Government Securities, Inc. v. Rhoades,* No. 81 Civ. 2555(MEL), 1991 WL 270450 (S.D.N.Y. Dec.5, 1991); *ACLI Government Securities, Inc. v. Rhoades,* 653 F.Supp. 1388 (S.D.N.Y.1987).

for prosecution for criminal contempt under 18 U.S.C. § 401(3) and Fed.R.Cr.P. 42(b). For the reasons that follow, plaintiff's motions are granted.

## I. Factual and Procedural Background

This action relates to plaintiff's efforts to collect a money judgment in the amount of $60,267.25 entered on September 1, 1987 by Hon. Morris E. Lasker, District Judge for the Southern District of New York. Since that time, plaintiff has been unable to collect any money to satisfy that judgment. *See* Letter of Jacques Semmelman, Counsel to Plaintiff, to Court dated July 10, 1997. The underlying facts and lengthy procedural history of plaintiff's collection efforts leading to these motions have been set forth in the cases cited above, and familiarity with them is presumed. I will, however, briefly describe the events leading to plaintiff's current motions.

On October 8, 1996, plaintiff served Daniel and Norma Rhoades (collectively, the "Rhoades") with Requests for Production of Documents. On November 14, 1996, plaintiff served the Rhoades with Requests for Tax Authorizations so that plaintiff could obtain directly from the I.R.S. and the New York State Department of Taxation the tax returns for both the Rhoades and various affiliated corporations and partnerships for which the Rhoades signed the returns. The Rhoades failed to respond to either the October 8 Requests for Documents or the November 14 Requests for Tax Authorizations. *See* Affidavit of Jacques Semmelman ("Semmelman Aff."), dated May 20, 1997, at ¶¶ 7–8 and Exs. D, E.

On December 4, 1996, plaintiff's counsel took the deposition of Eric Oppenheimer ("Oppenheimer"), a friend and business associate of Daniel Rhoades. During the course of this deposition, Oppenheimer identified various documents that he believed to be in the custody of Daniel Rhoades. *See id.* at ¶¶ 9–10 and Exs. F at 117, 120–121, 125, 142–43, 151–52, 198, and 227–228. Based on this deposition, plaintiff served a Supplemental Request for Production on Daniel Rhoades on February 11, 1997. *See id.* at ¶ 11, and Ex. G. Daniel Rhoades did not respond to the Supplemental Request, and neither Daniel or Norma Rhoades served objections to any of plaintiff's requests for documents at this time. ACLI wrote letters dated February 6, 1997 and March 14, 1997 to request compliance with its discovery demands. The Rhoades did not respond to either letter. *See id.* at ¶¶ 13–14.

On March 18, 1997, plaintiff wrote to the Court to request that an Order be issued directing the Rhoades to comply in all respects to all four discovery demands. In an Order dated March 26, 1997, I stated:

> Pursuant to Local Civil Rule 3(f), plaintiff ACLI Government Securities, Inc. requests that defendants Daniel Rhoades and Norma Rhoades be ordered to produce documents relating to this case. In two letters dated October 8, 1996, and in letters dated November 14, 1996 and February 11, 1997 (all of which were docketed by the Court on March 26, 1997), plaintiff requested that defendants produce certain documents pursuant to Fed.R.Civ.P. 34 and this Court's rules. . . . As defendants have not objected to the requests within the time provided for in Rule 46(e)(1), any objections defendants might have raised to the requests are deemed to have been waived. *See* Local Civil Rule 46(e)(1). Accordingly, it is ORDERED that within ten days of receipt of this Order defendants will provide the Court and plaintiff with a sworn affidavit specifying which of the requested documents do not exist or; if they do exist, why defendants are unable to provide them; and it is further ORDERED that within ten days of receipt of this Order defendants will produce all other documents requested by plaintiff. *A failure to comply with the terms of this Order may result in a finding of contempt.*

*See* Semmelman Aff., Ex. H (emphasis added). Plaintiff faxed a copy of this Order to the Rhoades on March 28, 1997, and served another copy by first class mail on April 1, 1997. *See id.,* Ex. I.

On April 3, 1997, plaintiff sent Daniel Rhoades a packet of tax authorization forms to facilitate his compliance with the March 26 Order. On April 11, 1997, Daniel Rhoades called plaintiff's counsel to request an exten-

sion of the deadline by which he and Norma Rhoades could comply with plaintiff's discovery demands. On April 14, 1997, plaintiff sent the Rhoades a letter confirming its agreement to an extension of the Rhoades' deadline to provide the Tax Authorizations by April 17, 1997 and the other documents by April 25, 1997. *See* Letter of Jacques Semmelman to the Court of April 21, 1997. Plaintiff received no documents from the Rhoades on those dates, and on April 21, 1997 requested by letter permission to move for contempt.

Although on April 28, 1997, Daniel Rhoades delivered materials to plaintiff's counsel, plaintiff now alleges this production of materials failed to comply with the March 26 Order. A pre-motion conference was scheduled for May 7, 1997. Despite repeated notifications by his adversary and the Court, the Rhoades[2] failed to appear or send counsel on that date. I therefore granted plaintiff leave to move for contempt.

## II. Discussion

### A. Motion for Contempt

#### 1. Applicable Legal Standards

Daniel Rhoades has twice been held in civil contempt of court during the course of this litigation.[3] *See Rhoades*, 1995 WL 731627 at *3; Semmelman Aff., Exs. A, B. Because I set forth the legal standards that apply to contempt motions on both occasions, I assume the parties are familiar with them. Hence, I will only outline those standards here.

The inherent power of all courts to order the confinement of a contemnor is firmly established. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991) (quoting *Ex parte Robinson*, 19 Wall. 505, 510, 22 L.Ed. 205 (1873)). As "the underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings ... [but also] disobedience to the orders of the Judiciary," this inherent power reaches beyond the court's confines. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798, 107 S.Ct. 2124, 2132–33, 95 L.Ed.2d 740 (1987). A court is justified in holding a party in civil contempt when: (1) the court's order was "clear and unambiguous;"[4] (2) the proof of noncompliance is clear and convincing; and (3) the party has failed to make reasonably diligent efforts to comply. *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir.1989); *EEOC v. Local 638 ... Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir.1985), *aff'd*, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986).

Sanctions for civil contempt resulting from actions occurring outside the courtroom, such as those here, are designed to compel future compliance with a court order. *See Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 2557, 129 L.Ed.2d 642 (1994). In an ordinary civil proceeding, such sanctions may be imposed upon notice and an opportunity to be heard. *Id.* Proof beyond a reasonable doubt and a jury trial are not necessary. *Id.* A civil contempt sanction typically involves "confining a contemnor until he complies with an affirmative command." *Id.* A court may confine a civil contemnor only "when the contemnor is given the option of earlier release if he complies .. [and] is able to purge the contempt and obtain his release." *Id.* Civil contempt therefore per-

---

**2.** Norma Rhoades claims to be too ill to appear in Court, and Daniel Rhoades has submitted extensive outpatient hospital bills to support that claim. *See* D. Rhoades Aff. ¶ 23, Ex. B. I note in passing that the most recent bill, dated "6/1/97", states: "Since you have failed to resolve your account in total, you leave us no alternative not to assign your account to our collection attorneys." *Id.*, Ex. B.

**3.** In addition, I previously ruled that Rhoades and Rhoades' corporation "Be Be Blond, Ltd."

have willfully violated a discovery order. *See Rhoades*, 813 F.Supp. at 258–59; *Rhoades*, 907 F.Supp. at 69.

**4.** A "clear and unambiguous order" is one " 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed.' " *Nat'l Org. for Women*, 886 F.2d at 1352 (quoting *In re Baldwin–United Corp.*, 770 F.2d 328, 339 (2d Cir.1985)).

forms a remedial and not punitive function. *Id.*

### 3. Analysis

Defendants do not claim the March 26 Order was not "clear and unambiguous". *See* Affirmation of Daniel Rhoades Opposing Motion for Finding of Contempt ("D. Rhoades Aff."); Affirmation of Norma Rhoades Opposing Motion for Finding of Contempt ("N. Rhoades Aff."). Rather they argue, *inter alia,* that they either fully complied with the March 26 Order or made reasonably diligent efforts to do so.[5] *See* D. Rhoades Aff. at ¶ 3; N. Rhoades Aff. at ¶ 3. This raises the question of whether plaintiff has proved by clear and convincing evidence that defendants have neither complied with the March 26 Order nor made reasonably diligent efforts to comply with it.

The affidavit and exhibits submitted by plaintiff in support of its motion overwhelmingly demonstrate defendants' failure to comply with the March 26 Order. *See* Semmelman Aff. at ¶¶ 27–48. Set forth below are various examples—but not a complete list—of defendants' noncompliance:

1. Although Daniel Rhoades provided an executed I.R.S. Form 4506, he did not provide an executed I.R.S. Form 8821, which is expressly required under the instructions printed on Form 4506. Plaintiff's counsel had provided blank copies of Form 8821 with his letter of April 3, 1997. *See id.* at ¶ 27, Ex. J.

2. Defendants did not produce I.R.S. Forms 4506 or 8821 for Norma Rhoades, Rhoades & Rhoades, P.C., or for any other corporation or partnership. *See id.* at ¶ 28.

3. Defendants did not produce tax authorizations on behalf of Eridan Corp., although Daniel Rhoades appears to be the president or former president, and Norma Rhoades the vice-president, of that entity,

and despite evidence that Eridan has substantial funds. *See id.* at ¶ 29, Ex. N.

4. Neither Rhoades has provided tax authorizations of 82 Main Street Corp., of which they appear to be primary officers. *See id.* at ¶ 30.

5. Neither defendant produced N.Y.S. Department of Taxation Form PR–152.7 or Form DTF–14.1, which plaintiff's counsel also provided to them on April 3, 1997. *See id.* at ¶ 31.

6. Defendants did not produce any signed New York tax authorization forms for Rhoades & Rhoades, P.C., Eridan Corp., or 82 Main Street Corp., although plaintiff's counsel provided such forms on April 3, 1997. *See id.* at ¶ 32.

7. Daniel Rhoades indicated he does not have or control any telephone bills, electric bills, insurance records and similar documents in connection with the property where he and Norma Rhoades reside and maintain their law practice. *See id.,* Ex. K at ¶ 5.

8. Defendants have failed to produce documents relating to Rhoades & Rhoades, P.C.; Daniel Rhoades asserts that he does not "have or control" such documents. *See id.* at ¶ 10.

9. Defendants failed to produce documents relating to Eridan Corp. and Farfala Holding Corp. and their financial status. *See id.* at ¶¶ 13, 14.

10. Norma Rhoades failed to respond to any of plaintiff's demands for documents, other than to provide a single, unnotarized form. *See id.* ¶ 45.

In light of the above, and given that defendants do not contend that they produced these documents, there is no real factual dispute as to defendants' conduct. Hence, I reject defendants' assertion that they have complied with the March 26 Order, and find that plaintiff has established by clear and convincing evidence that the material produced on April 28, 1997, was insufficient to

---

**5.** Defendants also argue that plaintiff's motion must fail because service of the motion on defendants was improper, or that in the alternative they have a right to take "oral evidence" as provided by Local Rule 83.9. I reject both contentions. Plaintiff made service as provided by

Local Rule 83.9(a) on Rhoades & Rhoades, P.C., defendants' counsel of record, and Local Rule 83.9(b) only requires oral evidence to be taken when factual disputes exist as to the alleged contemnor's conduct.

constitute even marginal compliance with that Order.

██ The remaining question, therefore, is whether plaintiff has proved by clear and convincing evidence that defendants failed to make reasonably diligent efforts to comply with the March 26 Order. Daniel Rhoades does contend that he has looked for various documents, but that he either does not possess them or is unable to find them. *See id.,* Ex. K ("Response to Request for Documents"), at ¶¶ 2 (tax returns), 5 (mortgage documents), 13 (legal bills), 15 (documents concerning sale of property and proceeds in escrow). Alternatively, the Rhoades state that the documents demanded by plaintiff's do not exist at all. *See, e.g., id.* at ¶¶ 2, 4, 7, 13, 14.

The record strongly supports plaintiff's allegation that defendants failed to make a reasonably diligent effort to comply with the March 26 Order. Defendants have known of plaintiff's initial document demands since October 8, 1996, and of plaintiff's supplementary demands since February 11, 1997. Plaintiff's counsel, though not obliged to do so, provided defendants with blank forms to facilitate their compliance with plaintiff's document demands. Yet neither defendant responded to any of plaintiff's document demands or related letters until *after* plaintiff wrote the Court to request permission to move for contempt. Nor have they indicated in any manner where or how they may have searched for any of the demanded documents, why those documents have been difficult to locate, or what steps they plan to take in order to locate them. Such conduct comports with defendants' long history of abusing the discovery process and disregarding the Orders of this Court—it cannot be deemed "reasonably diligent" in any way.

Additionally, defendants' affidavits submitted in opposition to plaintiff's motion undermine their assertion that they made reasonably diligent efforts to comply with the March 26 Order. Defendants variously assert that plaintiff has no right to collect its judgment against them, that their motion is an attempt to "do injustice to elderly people", and that plaintiff and plaintiff's counsel should cease their efforts to collect the judg-

ment against defendants because they are wealthy and "surely can get along without money from them." *See* D. Rhoades Aff. at ¶¶ 11, 22, 23; N. Rhoades Aff. at ¶¶ 20, 22. These statements suggest defendants have chosen not to comply with the March 26 Order because they believe plaintiff is not entitled to collect its judgment.

Defendants' arguments are singularly unconvincing. Plaintiff has established by clear and convincing evidence that defendants have failed to comply with the March 26 Order or make reasonably diligent efforts to do so. Accordingly, plaintiff's motion is granted with regard to both defendants.

### B. Motion to Refer for Prosecution Under 18 U.S.C. § 401(3)

The power of the court to punish contemnors has a long common law history. *See* Philip A. Hostak, *International Union, United Mine Workers v. Bagwell: A Paradigm Shift in the Distinction Between Civil and Criminal Contempt,* 81 Cornell L.Rev. 181, 186–191 (1995) (describing "ancient" history of "the inherent power of common-law courts to punish disobedience and affronts to their authority"). Congress has also provided a statutory basis for the sanction of criminal contempt:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401.

██ Courts are not entirely reliant on the Executive Branch to prosecute contemnors under this statute, as "[t]he ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on the other Branches." *Young,* 481 U.S. at 795, 107 S.Ct. at 2131. Thus, Rule 42(b) of the Federal Rules of Criminal Procedure authorizes the appointment of private attorneys to prosecute criminal contempt actions. However, the Supreme Court has expressly stated that ordinarily courts should request the appro-

priate prosecuting authority to prosecute contempt actions before appointing a private attorney to do so. *See id.* at 801, 107 S.Ct. at 2134–35.

 I do not lightly refer any litigant to the United States Attorney for prosecution of misconduct before this Court. Yet as the Supreme Court declared long ago,

> [i]f a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls "the judicial power of United States" would be a mere mockery.

*Young,* 481 U.S. at 796, 107 S.Ct. at 2131–32 (quoting *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 450, 31 S.Ct. 492, 501–02, 55 L.Ed. 797 (1911)). Continued contempt of court is a public offense that undermines the efficiency, authority and purpose of the judicial branch. Given all the circumstances of this case, and defendants' repeated misconduct, it would be unfair to the members of the bar and to society in general to ignore their obdurate contempt of the Orders of this Court.

Furthermore, Daniel Rhoades has made a practice of complying with court orders at the eleventh-hour, after having been found in contempt and after plaintiff has been required to tender $2,500 for the United States Marshal to execute a bench warrant for the arrest of Daniel Rhoades. At the May 7 pre-motion conference, plaintiff's counsel stated that he believed that Daniel Rhoades would continue to evade civil contempt sanctions in this manner, and that criminal sanctions were necessary to force him to obey the commands of the Court. I agree. Plaintiff's motion to refer Daniel Rhoades [6] to the United States Attorney for criminal contempt under 18 U.S.C. § 401(3) is granted.

### III. Conclusion

For the foregoing reasons, plaintiff's motions are granted. It is accordingly

ORDERED that, pursuant to Local Civil Rule 83.9(c)(5), a warrant shall be issued for the immediate arrest and confinement of Daniel Rhoades by the United States Marshal until he complies fully with the March 26 Order for a maximum term of six (6) months; it is furthermore

ORDERED that, pursuant to Local Civil Rule 83.9(c)(3), commencing within five days of this Order, Daniel Rhoades and Norma Rhoades shall each pay a daily fine of $1,000 for a maximum of thirty (30) days until full compliance with the March 26 Order is made; and it is additionally

ORDERED that Daniel Rhoades' noncompliance with the March 26 Order is hereby referred to the United States Attorney for the Southern District of New York for prosecution under 18 U.S.C. § 401(3).

---

6. Plaintiff has not moved to refer Norma Rhoades's contempt of court to the U.S. Attorney, presumably because of the severity of her illness.