# 2006 DTA 39

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL VI**

TANIA FONTANEZ FUENTES
Recurrida

JESÚS E. FONTANEZ GONZÁLEZ
Demandado

ARLENE M. VEGA AYALA
Demandada

v.

UNITED SALES ELECTRONICS & SERVICES, INC.
Peticionario

Núm. KLCE-2005-01532

San Juan, Puerto Rico, a 25 de enero de 2006

Panel integrado por su Presidente, el Juez Urgell Cuebas,
y los Jueces Gierbolini y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparece ante nos United Sales Electronic & Sales, Inc. (en adelante, la Peticionaria) mediante recurso de *certiorari* presentado el 7 de noviembre de 2005. En el mismo solicita se revise la orden emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el TPI), la cual le obliga permitir el examen de sus libros por parte de la Sra. Tania Fontánez Fuentes (en adelante, la Recurrida).

Por las razones que a continuación exponemos, expedimos el auto solicitado y confirmamos la orden del Tribunal de Primera Instancia.

**I**

El caso ante nuestra consideración se inició mediante una petición de filiación y alimentos presentada por la Recurrida contra el Sr. Jesús E. Fontánez González (en adelante, Sr. Jesús Fontánez) el 10 de diciembre de 1986. Luego de numerosos trámites, el 21 de febrero de 1990, el TPI declaró con lugar la demanda y le impuso al Sr.

Jesús Fontánez el pago de una pensión alimentaria provisional de ciento setenta y cinco dólares ($175) mensuales a favor de la menor Mariam Enid Fontánez Fontánez.

En lo pertinente a la controversia de autos, el 2 de mayo de 2003, la Recurrida solicitó una revisión de la pensión alimentaria fijada y que se encontrara incurso en desacato al Sr. Jesús Fontánez, ya que éste no había cumplido con el pago de la pensión provisional emitida mediante la sentencia de 1990. En vista de ello, el TPI emitió una orden de mostrar causa por atrasos en pagos de pensión alimentaria contra el Sr. Jesús Fontánez y a esos efectos señaló una vista para el 22 de julio de 2003.

Luego de varios incidentes procesales, ■ el 1ro de abril de 2004, la Examinadora de Pensiones Alimentarias recomendó una pensión provisional de quinientos cuarenta y dos dólares ($542) mensuales, la cual debía ser satisfecha a través de la Administración para el Sustento de Menores (ASUME). Asimismo, recomendó se emitiera una orden de retención de ingresos al patrono del Sr. Jesús Fontánez. Mediante Resolución de 6 de abril de 2004, el TPI acogió las referidas recomendaciones. Así pues, el 7 de abril de 2004, el aludido foro emitió una Orden de Retención de Ingresos dirigida a United Sales Electronic & Sales, Inc. (la Peticionaria), patrono del Sr. Jesús Fontánez.

Durante una vista celebrada el 21 de junio de 2004, la Recurrida informó que no se había efectuado retención alguna. En vista de ello, el 23 de junio de 2004, el TPI señaló para el 5 de agosto de ese año una vista de desacato contra la Peticionaria por un alegado incumplimiento a la orden de retención.

El 14 de julio de 2004, la Examinadora de Pensiones Alimentarias recomendó se aumentara a ochocientos setenta y tres dólares ($873) mensuales la pensión provisional. Dicha recomendación fue acogida por el TPI mediante Sentencia de 16 de julio de 2004. En vista del aumento en la pensión, el 28 de julio de 2004, el TPI emitió una Orden de Retención de Ingresos Enmendada dirigida a la Peticionaria la cual indicaba que debería retener del ingreso del Sr. Jesús Fontánez las siguientes cantidades: doscientos dieciséis dólares con siete centavos ($216.07) semanal para el pago de atrasos de la pensión alimentaria, doscientos un dólares con cuarenta y seis centavos ($201.46) semanal para el pago de la pensión alimentaria corriente, además de un dólar ($1.00) para sufragar el costo de cada retención que realizara.

El 5 de agosto de 2004, se celebró la vista de desacato contra la Peticionaria. Surge de la minuta de la referida vista que a la misma compareció el presidente de la Peticionaria, el Sr. Eliezer Fontánez. ■ Debido a que éste manifestó tener dudas respecto a cuál orden de retención debía acatar, se le aclaró que la Orden de Retención de Ingresos vigente era la emitida el 28 de julio de 2004.

Así las cosas, el 2 de septiembre y el 21 de octubre de 2004, la Recurrida solicitó se encontrara incursa en desacato a la Peticionaria por alegadamente incumplir con la orden de retención. Así pues, el 25 de octubre de 2004, el TPI le concedió a la Peticionaria el término de diez (10) días para que presentara su posición al respecto.

Posteriormente, el 14 de febrero de 2005, la Recurrida solicitó se señalara una vista para determinar los asuntos pendientes de resolver, entre éstos, las solicitudes de desacato contra la Peticionaria. A esos efectos, el TPI señaló una vista para el 5 de abril de 2005.

Según surge de la minuta de la vista celebrada el 5 de abril de 2005, el TPI señaló para el 17 de mayo de 2005 una vista para que la Peticionaria mostrara causa por la cual no se le debería encontrar incursa en desacato por el incumplimiento a la orden de retención. Asimismo, ordenó a ASUME calcular el total de la deuda a base de la pensión fijada y los pagos reclamados mediante orden de retención. Por último, señaló una segunda vista para el 20 de junio de 2005.

El 7 de abril de 2005, la Recurrida presentó Moción Informativa Sobre Deuda del Patrono. En la misma adujo

que la Peticionaria debió retener catorce mil seiscientos trece dólares con cincuenta y cinco centavos ($14,613.55). Sin embargo, sólo retuvo cuatro mil novecientos noventa dólares ($4,990), lo cual significaba que al 1ro de abril de 2005 adeudaba nueve mil seiscientos veintitrés dólares con cincuenta y cinco centavos ($9,623.55). Por tal razón, nuevamente solicitó se encontrara incursa en desacato a la Peticionaria.

A la vista del 17 de mayo de 2005 compareció ASUME, la Recurrida y el Sr. Eliezer Fontánez, en representación de la Peticionaria. Surge de la Minuta de la referida vista que la Recurrida informó haber presentado moción de desacato contra la Peticionaria debido a que no estaba cumpliendo con la orden de retención la cual era de ochocientos setenta y tres dólares ($873) mensuales. Asimismo, indicó que la deuda total del Sr. Jesús Fontánez para esa fecha ascendía a nueve mil ciento ochenta y nueve dólares ($9,189), de los cuales siete mil novecientos veintinueve dólares con setenta y tres centavos ($7,929.73) los adeudaba la Peticionaria.

Por su parte, la representante de ASUME informó que la Peticionaria estaba reteniendo la cantidad de quinientos cuarenta y dos dólares ($542) mensuales, razón por la cual quedaba un balance al descubierto que le correspondía satisfacer al Sr. Jesús Fontánez. Debido a que se desconocía la frecuencia del pago de la pensión, el TPI interrogó al Sr. Eliezer Fontánez. A preguntas del Tribunal, éste hizo constar que la diferencia en pago que faltaba se debía a que su compañía (la Peticionaria) estaba *"casi en quiebra"* y por tal razón había tenido que cesantear empleados y hacer reajustes de sueldo. Incluso, *"había tenido que utilizar de su dinero para poder pagar los sueldos de los empleados, ya que de no ser así, la compañía tendría que cerrar."*

Por su parte, la Recurrida alegó que la Peticionaria estaba actuando en violación a la Orden de Retención al sólo descontar del salario del Sr. Jesús Fontánez quinientos cuarenta y dos dólares ($542) para ASUME y hacerle entrega del resto del salario. En vista de ello, la representante de ASUME indicó que procedía se le impusiera una multa a la Peticionaria. A esto, la representante de la Recurrida indicó que de la Peticionaria no pagar los siete mil novecientos veintinueve dólares con setenta y tres centavos ($7,929.73) que debía, procedería a recobrar la deuda de los bienes de la misma. El Sr. Eliezer Fontánez solicitó un plazo de dos a tres meses para poder pagar las deudas, ya que por la situación económica que estaba atravesando la empresa, estaba considerando acogerse a la quiebra. En vista de lo anterior, el TPI le concedió a la Peticionaria un plazo de veinte (20) días para saldar la deuda sin intereses. De no poder cumplir, tendría cuarenta y cinco (45) días para saldarla con intereses.

Debido a que alegadamente la Peticionaria no cumplió con lo ordenado por el TPI, el 8 de junio de 2005, la Recurrida presentó Solicitud Urgente de Desacato Contra el Patrono. Dos días más tarde, el 10 de junio de 2005, el Sr. Jesús Fontánez solicitó se rebajara la pensión alimentaria provisional fijada debido a que su salario había sido reducido.

Durante la vista celebrada el 20 de junio de 2005, la Recurrida solicitó examinar los libros de la Peticionaria. Ello en vista de que ésta alegó que no podía cumplir con la orden de retención debido a su situación económica. Surge del recurso presentado por la Peticionaria que el representante legal de ésta consintió al referido examen.

Así las cosas, mediante comunicación escrita con fecha de 8 de septiembre de 2005, la representante legal de la Recurrida le solicitó al representante legal de la Peticionaria que se comunicara con ella para coordinar el examen de los libros de la corporación. Asimismo, le envió un Interrogatorio dirigido al Sr. Eliezer Fontánez. Por su parte, la Peticionaria, mediante comunicación escrita fechada 13 de septiembre de 2005, le indicó que no permitiría el examen de sus libros debido a que la información requerida estaba implícita en el interrogatorio sometido.

El 28 de septiembre de 2005, la Recurrida solicitó se le ordenara a la Peticionaria permitir el examen de sus libros, conforme se había comprometido su representante legal. A esos efectos, la Peticionaria presentó Moción Solicitando Orden. Adujo que no procedía el descubrimiento de prueba en su contra debido a que no era parte en

el pleito de fijación de pensión alimentaria. Por su parte, la Recurrida replicó y sostuvo, entre otras cosas, que la Peticionaria advino parte en el pleito al haber incumplido con la Orden de Retención de Ingresos Enmendada.

En vista de lo anterior, el 3 de octubre de 2005, notificada el 28 de octubre de 2005, el TPI emitió orden en la que indicó que *"El patrono tiene que permitir el examen de los libros de la corporación de inmediato o será sancionado."* Inconforme con dicho mandato, el 7 de noviembre de 2005, la Peticionaria presentó el recurso que nos ocupa. En el mismo indica el siguiente señalamiento de error:

*"Erro [sic] el Tribunal de Primera Instancia al determinar que UNITED tiene que permitir el examen de los libros de la corporación."*

En esa misma fecha también presentó Moción en Auxilio de Jurisdicción en la cual solicitó se paralizara el descubrimiento de prueba en su contra. Mediante Resolución de 7 de noviembre de 2005, notificada el 8 de noviembre de 2005, ordenamos la paralización de los procedimientos de descubrimiento de prueba en cuanto a United Sales Electronics & Services, Inc. Además, le concedimos el término de quince (15) días a las partes recurridas para mostrar causa por lo cual no debíamos expedir el auto solicitado.

En cumplimiento a la orden emitida, el 28 de noviembre de 2005, la Recurrida presentó Oposición a Petición de *Certiorari*. Sostuvo que no debía expedirse el auto solicitado debido a que alegadamente carecemos de jurisdicción para atender el mismo. Esto, ya que la Peticionaria no notificó su recurso a ASUME. Asimismo, indicó no procede la solicitud de la Peticionaria, entre otras cosas, debido a que ésta consintió al descubrimiento de prueba y compareció voluntariamente al pleito.

Con el beneficio de la comparecencia de las partes, nos encontramos en posición de resolver.

## II

La Regla 33 (B) del Reglamento del Tribunal de Apelaciones referente a la presentación y notificación del recurso de *certiorari*, dispone lo siguiente:

*"La parte peticionaria notificará la solicitud de certiorari, debidamente sellada con la fecha y la hora de presentación, a los abogados(as) de récord, o en su defecto, a las partes, así como al Procurador(a) General y al (a la) Fiscal de Distrito en los casos criminales, dentro del término dispuesto para la presentación del recurso. Este término es de estricto cumplimiento. Efectuará la notificación por correo certificado con acuse de recibo o mediante un servicio similar de entrega personal por compañía privada con acuse de recibo. Cuando se efectué por correo, se remitirá la notificación a los abogados(as) de las partes o las partes, cuando no estuvieron representadas por abogado(a), a la dirección postal que surja del último escrito que conste en el expediente del caso. Cuando del expediente no surja una dirección, de estar la parte representada por abogado(a), la notificación se hará a la dirección que de éste(a) surja del registro que a esos efectos lleve el Secretario(a) del Tribunal Supremo. La parte peticionaria certificará el hecho de la notificación en la propia solicitud de certiorari...".*

La falta de notificación de un recurso de *certiorari* al abogado de récord o, en su defecto, a la parte, dentro del término de cumplimiento estricto sin que medie una detallada justa causa, da lugar a la desestimación. Véase, *Zayas v. Royal Ins. Co. of P.R., Inc.,* 146 D.P.R. 694, 701-702 (1998); *Pueblo v. Pérez Suárez,* 146 D.P.R. 665, 675 (1998).

Por otro lado, el Artículo 24 de la Ley Orgánica de la Administración Para el Sustento de Menores (en adelante, Ley de Asume), 8 L.P.R.A. sec. 523, establece la retención de ingresos como una medida para asegurar la efectividad del pago de pensiones alimentarias. El inciso (1)(a) del mencionado artículo provee, en lo pertinente, que:

*"El tribunal o el administrador, conforme a las disposiciones de este capítulo, al momento de fijar o modificar una pensión alimentaria, emitirá inmediatamente una orden fijando o modificando la pensión alimentaria y requiriendo al patrono del alimentante o a cualquier persona que sea pagador con relación al alimentante, conforme se define en la sec. 501 de este título, que retenga o descuente en el origen, de los ingresos del alimentante, independientemente de si existen o no atrasos en el pago de pensión alimentaria, las cantidades señaladas en la orden para satisfacer el pago de la pensión, y de cualquier deuda por razón de pensiones vencidas y no pagadas."* `

La orden de retención de ingresos es fundamental para el aseguramiento y cobro de deuda por alimentos. Mediante este mecanismo, todo alimentante que sea empleado o reciba alguna remuneración adicional de un pagador se podrá mantener al día en el cumplimiento de sus obligaciones alimentarias. *Santiago v. Rodríguez*, 161 D.P.R. ___, **2004 J.T.S. 86**, a la página 1084, Opinión de 20 de mayo de 2004.

La Ley de ASUME dispone que el secretario del tribunal o el Administrador de ASUME, según sea el caso, notificará prontamente al patrono o al pagador del alimentante deudor, y al alimentista, la orden de retención de ingresos, señalándose su obligación de retener o descontar en el origen de los ingresos del alimentante las cantidades señaladas en la orden para satisfacer el pago de la pensión y de cualquier deuda por razón de pensiones vencidas y no pagadas. 8 L.P.R.A. sec. 523(5). Éstas órdenes son efectivas desde su notificación y continúan en vigor mientras subsista la obligación de prestar alimentos o hasta que sea suspendida o dejada sin efecto, modificada o revocada por el tribunal o el Administrador. 8 L.P.R.A. sec. 523(5)(a).

Asimismo, la Ley de ASUME dispone para los casos en que el patrono incumpliere con una orden de retención que le haya sido emitida. Se señala que cuando un patrono o pagador dejare de retener o remitir el ingreso retenido conforme a una orden de retención, o no cumpliera con cualesquiera deberes impuestos por este capítulo, a solicitud del acreedor, el tribunal o el Administrador, *motu proprio*, según sea el caso, previa notificación al patrono o pagador, y notificación para la celebración de vista, dictará sentencia u orden por el total de la cantidad que el pagador o patrono dejó de retener y remitir, más las multas, gastos e intereses que podrán imponer, y ordenará la ejecución de ésta sobre la propiedad del patrono o pagador, excepto en el caso en que el patrono o pagador sea un municipio, departamento o agencia del Estado Libre Asociado. 8 L.P.R.A. sec. 523(13). Así pues, se establece que el Tribunal retendrá la autoridad de imponer desacato civil o criminal por el incumplimiento de las órdenes del tribunal o del Administrador o el Juez Administrativo. 8 L.P.R.A. sec. 530.

### III

Los actos constitutivos de desacato pueden ser directos o indirectos. De esta forma se incurrirá en desacato directo cuando la acción u omisión lesiva a la adecuada administración de la justicia se cometa en presencia del tribunal, mientras que el desacato será indirecto cuando dicha acción u omisión ocurra a distancia del tribunal y fuera de su inmediata presencia. *In re: Cruz Aponte,* 159 D.P.R. ___, **2003 J.T.S. 52**, a la página 818, Opinión de 7 de abril de 2003, citando a Robert Molina Pasquel, *Contempt of Court, Correcciones disciplinarias y medios de apremio,* (1954), páginas 65-66. A su vez, el desacato directo puede ser civil o criminal. *supra.*

El desacato civil es el mecanismo mediante el cual los tribunales obligan a que se cumpla con una orden emitida cuando la parte obligada por la misma ha hecho caso omiso de ésta. *Álvarez Elvira v. Arias Ferrer,* 156 D.P.R. ___, **2002 J.T.S. 37**, a la página 828, Opinión de 18 de marzo de 2002. Éste, *"consiste de la imposición de una penalidad por un tiempo indefinido, sujeta a que la persona cumpla con una orden u obligación primaria que forma parte de la acción civil principal."* Dora Nevares-Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño*, 1995, 4ta ed., página 239.

Como excepción a la prohibición constitucional contra el encarcelamiento por deuda, el tribunal puede ordenar el encarcelamiento por desacato civil por incumplimiento de una pensión alimentaria. No obstante, si el obligado a pagar demuestra que el incumplimiento con el pago de la pensión se debe a una causa justificada, no

procederá la imposición de esta medida extrema. *Srio. D.A.C.O. v. Comunidad San José, Inc.,* 130 D.P.R. 782, 805 (1992); *Espinosa v. Ramírez,* 72 D.P.R. 901, 906-907 (1951).

Desde *Villa v. Corte,* 45 D.P.R. 879, 900 (1933), el Tribunal Supremo ha reconocido que el imputado tiene la facultad de evitar ser encarcelado indefinidamente si logra demostrar causa justificada para la conducta que se alega constitutiva de desacato civil. Aunque la imposición de una sentencia de desacato civil, por su naturaleza reparadora y no punitiva, exige un grado menor de salvaguardas procesales que la imposición de una sentencia por desacato criminal, no podemos obviar que el imputado está expuesto a perder su libertad, por lo cual han de reconocerse unos requisitos fundamentales mínimos en dichos procedimientos, corolarios del debido proceso de ley en su dimensión constitucional. *Pérez v. Espinosa,* 75 D.P.R. 777, 781 (1954).

La jurisprudencia reconoce que la parte a la que se le imputa un desacato civil tiene derecho a que se le notifique de las alegaciones, se le advierta de su derecho a representación legal, se le otorgue tiempo adecuado para preparar su defensa, y a que se celebre una vista evidenciaria. *Pres. del Senado,* 148 D.P.R. 737, 787 (1999), Opinión concurrente y disidente emitida por el Juez Asociado señor Hernández Denton. En dicha vista, la parte promovente tiene el peso de demostrar mediante prueba clara y convincente que el imputado incumplió con la orden del tribunal. Una vez cumplida con esta demostración de violación *prima facie,* el peso de la prueba se altera, y corresponde al imputado presentar evidencia que excuse su incumplimiento. *Chairs v. Burgess,* 143 F.3d 1432, 1436 (1998).

La vista evidenciaria debe ofrecer al imputado la oportunidad de poder explicar porqué no se debe imponer el desacato, a la vez que le permita establecer un récord adecuado para revisión apelativa. *Harris v. City of Philadelphia,* 47 F. 3d 1333, 1339 (1995). Además, debe permitirle demostrar que no violó la orden emitida, o que estaba excusado de cumplirla, o cualquier otra defensa pertinente. *A.C.L.I. Government Securities Inc. v. Rhoades,* 989 F. Supp 462, 465 (1997). Entre las circunstancias atenuantes al incumplimiento, se han reconocido la buena fe, la imposibilidad de cumplimiento y el cumplimiento sustancial. *Washington Metropolitan Transit Authority v. Amalgamated Transit Union,* 531 F.2d 617, 620 (1976).

Reiteradamente, el Tribunal Supremo ha reconocido que el descubrimiento de prueba es el mecanismo adecuado para facilitar la consecución de evidencia por las partes. Su incorporación en nuestro ordenamiento procesal obedece a la necesidad de ofrecer a las partes la oportunidad de obtener información pertinente al asunto en controversia que pueda facilitar el desarrollo del proceso, y promover la búsqueda de la verdad. Rafael Hernández Colón, *Manual de Derecho Procesal Civil,* Michie de Puerto Rico, 1994, página 220.

Es norma reiterada la que establece la importancia de que el descubrimiento de la prueba sea amplio y liberal. El propósito primordial del mismo es que aflore la verdad de lo ocurrido evitando así los inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día del juicio las cuestiones y los hechos que en realidad son objeto del litigio. *Medina v. M.S.& D. Química P.R. Inc.,* 135 D.P.R. 716, 730 (1994); *Sierra v. Tribunal Superior,* 81 D.P.R. 554, 560 (1959). Un descubrimiento de prueba amplio y abarcador, es la médula del esfuerzo por destruir, de una vez y para siempre, la deportiva teoría de justicia que tanto mina la fe del pueblo en el sistema judicial. *Aponte v. Sears Roebuck de P.R., Inc.,* 129 D.P.R. 1042, 1049 (1992). Véase también, *Alvarado v. Alemañy,* 157 D.P.R. \_\_\_ (2002), **2002 J.T.S. 98**, a la página 1365, Opinión de 28 de junio de 2002.

De conformidad con la Regla 23.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R 23.1, el descubrimiento de prueba sólo tiene dos (2) limitaciones, a saber: que la información objeto del descubrimiento no sea privilegiada, y que la misma sea pertinente al asunto en controversia.

El término privilegiado se refiere exclusivamente a los privilegios que reconocen las reglas de evidencia. *Rivera Alejandro v. Algarín,* 112 D.P.R. 830, 833 (1982). Por lo tanto, en ausencia de un privilegio específico reconocido por nuestro ordenamiento jurídico, no procede objeción alguna a un descubrimiento de prueba bajo

ese fundamento.

En relación con el concepto de pertinencia, éste es mucho más amplio que el empleado en el área del derecho probatorio para la admisibilidad de la prueba. *García Rivera et al. v. Enríquez,* 153 D.P.R.___ (2001), **2001 J.T.S. 15**, a la página 818, Opinión de 2 de febrero de 2001; *Medina v. M.S.&D. Química P.R. Inc., supra,* a la página 731. Así, para que una materia pueda ser objeto de descubrimiento, basta con que exista una posibilidad razonable de que tenga relación con el asunto en controversia. *Rodríguez v. Scotiabank de P.R.,* 113 D.P.R. 210, 212 (1982).

Es decir, se admite el descubrimiento de todos los asuntos que puedan tener cualquier relación posible con la materia que es objeto del litigio, aunque no estén relacionados con las controversias específicas que han sido esbozadas en las alegaciones. Basta que exista una posibilidad razonable de relación con el asunto en controversia. En virtud de lo anterior, el descubrimiento de prueba permite, inclusive, la entrega de materia que sería inadmisible en el juicio, si ésta conduce a prueba admisible. *Alvarado v. Alemany, supra; García Rivera et al. v. Enríquez, supra.*

No obstante, el descubrimiento de prueba no es uno ilimitado. El tribunal puede limitar el alcance y los mecanismos de descubrimiento de prueba a utilizarse, siempre que con ello se adelante la solución de controversias de forma rápida, justa y económica. Las reglas establecen el mecanismo de la orden protectora, con el propósito de proteger a la parte o persona con relación a la cual se utiliza el descubrimiento de hostigamiento, perturbación u opresión, así como, cualquier gasto o molestia indebida. *Alfonso Brú v. Trane Export, Inc.,* 155 D. P.R. ___ (2001), **2001 J.T.S. 132**, a la página 139, Opinión de 20 de septiembre de 2001. Véase, además, Regla 23.2 de las de Procedimiento Civil, *supra.*

## IV

Primeramente, atenderemos el planteamiento de falta de jurisdicción esbozado por la Recurrida. Aduce ésta que no procede la expedición del auto solicitado debido a que la Peticionaria no notificó la presentación de su recurso a ASUME. No le asiste la razón.

Es menester aclarar que la controversia ante nos surge como consecuencia de varias solicitudes de desacato presentadas por la Recurrida contra la Peticionaria por ésta alegadamente no haber cumplido con la orden de retención emitida por el TPI en su contra. En vista de ello, el referido foro le solicitó a ASUME le certificara la cantidad adeudada por la Peticionaria.

ASUME compareció a la vista de desacato, únicamente en calidad de testigo, a los efectos de cumplir con lo solicitado por el TPI. Así pues, siendo ésta sólo testigo, no parte del incidente del desacato, no tenía que ser notificada del recurso ante nuestra consideración. Por lo tanto, no procede la desestimación del recurso por el fundamento de falta de jurisdicción.

Por otra parte, en el caso de autos, el TPI, mediante la autoridad que le fuera concedida en virtud de la Ley de ASUME, emitió una orden de retención contra la Peticionaria, con la cual estaba obligada a cumplir a partir de su notificación, según el derecho esbozado anteriormente. Debido a que la Peticionaria alegadamente incumplió con la referida orden, la Recurrida solicitó al TPI que a ésta se le encontrara incursa en desacato, según lo permite la sección 523 (13) de la Ley de ASUME. En vista de ello, el foro de instancia señaló una vista a los efectos de dilucidar dicha contención. En la misma, la Peticionaria alegó, como justificación para su incumplimiento, estar atravesando por una difícil situación económica. Así pues, la Recurrida le solicitó examinar sus libros.

A la luz del derecho esbozado anteriormente, la Recurrida tiene derecho a solicitar y obtener dicha prueba, debido a que la misma es pertinente para resolver su solicitud de desacato. En vista de que la Peticionaria justifica su incumplimiento por alegadamente no contar con los medios suficientes para acatar la orden impuesta por el

TPI, la Recurrida tiene derecho a examinar los libros de la corporación para así poder constatar si en efecto, existe la referida situación económica.

De otro lado, incide la Peticionaria al sostener que no es parte en la presente controversia. Ésta sí es parte en el procedimiento de desacato, porque fue solicitado en su contra y fue a quien el TPI le emitió la orden de retención. Además, el descubrimiento de prueba requerido lo fue para propósitos del referido procedimiento. Asimismo, quien trajo a colación la situación económica de la Peticionaria fue ella misma.

Por último, debemos indicar que, según surge de los autos originales, desde el 1990, fecha en que se emitió sentencia imponiéndole al Sr. Jesús Fontánez una pensión alimentaria provisional de ciento setenta y cinco dólares ($175), solamente se han satisfecho dos pagos en concepto de pensión alimentaria. Luego de tantos años de pensiones provisionales, este caso amerita acción urgente para que de una vez y por todas se fije una pensión alimentaria permanente, según disponen las Guías Para Determinar y Modificar las Pensiones Alimentarias.

El TPI procederá a exigir el cumplimiento estricto con los términos dispuestos para culminar el descubrimiento de prueba. Asimismo, deberá fijar una pensión alimentaria permanente en o antes de treinta (30) días, claro está, asegurándole a todas las partes involucradas un debido proceso de ley.

## V

Por los fundamentos antes expuestos, se expide el auto solicitado y se confirma la orden del Tribunal de Primera Instancia.

Notifíquese por vía facsímil y/o teléfono y por correo ordinario.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones